## ARENT *v.* SQUIRE & JOHNSON.[*]

A warehouseman who takes goods upon storage for hire is answerable for their loss, or the loss of any part of them, not proceeding from the inherent nature of the goods, such as absorption, deterioration or like cause, unless he can show that the loss occurred under circumstances exonerating him from all blame; or if he cannot do that, that he exercised a degree of care in their safe-keeping that would repel any suspicion of the loss having occurred through his negligence or dishonesty.

It is sufficient for the plaintiff in the action to show that the property entrusted to the warehouseman has not been restored upon demand, or has been returned diminished in quantity, or injured. It is then incumbent upon the defendant to show how the loss or injury occurred, or that he exercised proper care,—as it is to be assumed that the one who had the control and custody of the property, is better able to account for its loss or injury than the one who confided it to his keeping.

The presumption that all persons are presumed to have duly discharged any duty imposed upon them by law, is allowed for the benefit of those entrusted with the discharge of public duties as well as for those interested in or affected by the discharge of them. Whether a presumption of this nature is to be applied to private persons or not, will depend upon the circumstances of each particular case.

Where a bailee for hire returns the property committed to his care materially injured or fails to return all that was entrusted to him, it is a more legitimate inference to conclude that there was a want of proper care and diligence than to presume that it was exercised.

The plaintiff stored with the defendant ten pipes of gin, which were gauged in the defendants' wareroom on the day when they were received, and when gauged, upon their redelivery to the plaintiff, there was found to be a deficiency in two of the pipes of about sixty gallons, to recover for the value of which the action was brought. Upon this state of facts, the defendants moved for a non-suit upon the ground that there was nothing to show that the loss was occasioned by their negligence,—*Held*, that the motion was properly denied.

The defendants then proved that the two pipes were stored with the rest in a loft to which nobody had access but themselves and their employees. They gave some evidence of the trustworthiness of their employees, but neither they nor their employees were examined as witnesses to show that they knew nothing of the manner in which the loss occurred, and there was evidence from which it was fairly inferable that the two pipes had been recoopered while in the defendants' loft, but by whom or for what purpose was not shown ;—*Held*, not sufficient to exonerate them from liability.

This was an appeal from the Fifth District Court. The action

[*] This case was decided at the April General Term, 1858.

Arent v. Squire.

was to recover for the loss of gin stored with the defendants, of the value of fifty-seven dollars.

The plaintiff proved that he stored ten pipes of gin with the defendants, who keep a bonded warehouse in the city of New York; that they remained upon storage for four months, when they were delivered to the plaintiff's cartman, the defendants being paid for the storage. Two of the pipes were delivered on the 6th of September, 1857. They were brought by the cartman to a warehouse in Duane street, where the workmen, in rolling them into the warehouse, discovered that there was liquor out of each pipe. Within ten minutes after the delivery by the cartman, his attention was called to the deficiency of liquor in the casks, and the book-keeper of the warehouse then proceeded to gauge them, when he found a deficiency in both casks of sixty-eight gallons. Two days after they were guaged by a city gauger, who found a deficiency of seventy gallons in both pipes, being two gallons more. It was further proved that these two pipes were gauged by a gauger in the defendants' warehouse upon the day when they were received there, and that there were but three gallons out of one pipe, and six out of the other, showing that there was a deficiency of about ten gallons when the casks were deposited by the plaintiff's cartman in the warehouse in Duane street. The cartman testified that the two pipes were about a half an hour upon his cart, that he did not take any out, that he did not leave his cart, but delivered them in the same condition in which he received them. It was further proved that when the pipes were received at the warehouse in Duane street, they were in excellent condition—that there was no indication of leakage—that there was a chalk mark on one of the pipes to indicate the place where the hoop was to be put; that both pipes showed marks of cooperage, and that any one familiar with liquor would know upon rolling a pipe upon its side whether thirty gallons were out or not. The plaintiff then proved the value of the gin per gallon.

Upon this evidence the plaintiff rested, and the defendant moved for a dismissal of the complaint, upon the ground that no negligence had been shown on the part of the defendants as alleged in the complaint, which was denied by the Justice, and the defendants excepted.

# NEW YORK—DECEMBER, 1863.     349

Arent v. Squire.

The defendants then called their out-door clerk, who testified that he delivered the two pipes to the cartman upon the plaintiff's order—that they were then in good condition—that he did not observe any marks upon them; that it was often necessary to open packages in the warehouse, and that the chalk marks spoken of was no sign of negligence, and that it was frequently done. That no person could have access to the gin, unaccompanied by one of the employees of the warehouse; that there was no complaint made as to any of the gin stored with these two pipes, nor any complaint of the loss of liquor or goods at the defendants' warehouse except in July, 1857; that all the goods in the defendants' warehouse are in the custody of the United States officers, and are always under the lock and key of the United States. That there is an officer of the United States in the warehouse, and that no goods can be taken out without his order. That there are eight or ten persons employed in the warehouse—six porters who work through every floor, and have access to every part of the building. That these parties are entirely trustworthy; that there was no reason to suspect any of the defendants' employees of stealing, and that he never heard of any loss where the packages were in good condition.

Another witness was then called by the defendants, who testified that he rolled out " most of the ten pipes;" that he did not " roll away one that had any thing like thirty gallons out of it;" that he could not have put his hand to a pipe without knowing it, if such were the fact; and the defendants further gave in evidence that two or three days after the gin was delivered, all the porters were called up and asked if they had rolled out any pipes with liquor missing, and they testified they had not. It further appeared that the two pipes had been coopered while in the defendants' loft, but by whom or for what purpose the defendants did not show.

Both parties having rested upon the evidence, the justice gave judgment for the value of the gin found missing.

*S. P. Brownell*, for the appellant.

*L. Cohen*, for the respondent.

Arent v. Squire.

By the Court.—Daly, F. J.—The question in this case is whether it was incumbent upon the plaintiff to show how the gin was lost, and that it was through the defendant's negligence, or if this point should be determined in the plaintiff's favor, if there was, upon the whole case, sufficient evidence to charge the defendants.

The defendants, as keepers of a warehouse in which the gin was received upon storage for hire, were bound to exercise ordinary diligence, or that care which prudent persons usually take of their own property. (*Cailiff* v. *Danvers*, 1 Peake, N. P. C., 114; *Finucane* v. *Small*, 1 Esp., 315; *Thomas* v. *Prov. & Boston R. R. Co.*, 10 Met., 472; Jones on Bailments, § 7; Angell on Carriers, § 45; Edwards on Bailments, § 284.)

Warehousemen are not insurers of the safety of the property entrusted to their care, and are not liable in the event of loss, if they take what Mr. Justice Story calls reasonable and common care of it. To this extent the law is well settled; but where property committed to their charge is lost, missing or injured, the authorities are by no means agreed upon the question whether the obligation is upon them to remove any imputation of its having occurred through their connivance or negligence, by showing that they took proper care of it, or whether it rests upon those who would hold them responsible, to establish that there was a want of it.

It is said that every person is presumed to do his duty until the contrary is shown, and that the burthen is on a plaintiff to negative that presumption by appropriate proofs. (Story on Bailments, § 213.) It is admitted, however, by the learned author, from whom this language is quoted, that it is deserving of consideration how far this principle ought to govern in cases of bailments generally. In my judgment its application in such cases is very limited. If a man who is paid for his care and trouble in taking charge of property, returns it materially injured, or diminished in quantity, or fails, when requested, to return it at all, there is no foundation for any such presumption. But I shall have occasion to recur to this point again after examining how the general question stands upon the authorities.

In *Platt* v. *Hibbard*, (7 Cow., 500) Chancellor Walworth, then Circuit Judge, instructed the jury that "in all cases of

bailment of property to a person who carries on a public business of receiving it into his custody or under his care, for reward, it is necessary that a strict rule should be enforced against the bailee to prevent fraud. Hence, when property entrusted to a warehouseman, wharfinger, or storing or forwarding merchant, in the ordinary course of business, is lost, injured or destroyed, the weight of proof is with the bailee to show a want of fault or negligence on his part; or in other words, to show that the injury did not happen in consequence of his neglect to use all the care and diligence on his part, that a prudent or careful man would exercise in relation to his own property." The correctness of this instruction did not come under consideration in the subsequent review of the case before the Court in banc as the verdict was for the defendant and the ruling was favorable to the plaintiff; but in a note appended by the learned reporter, it was questioned upon the authority of several English cases which will be hereafter considered.

In this note Justice Cowen states the rule to be as follows: "When there is a total default to deliver the goods bailed on demand, the *onus* of accounting for the default lies with the bailee, otherwise he shall be deemed to have converted the goods to his own use and trover will lie; but when he has shown a loss, or where the goods are injured, the law will not intend negligence. The *onus* is then shifted upon the plaintiff. In the case of a common carrier, however, the rule is different, as the law presumes against him in all cases, even of accident, until he shows the loss or injury to have arisen from the enemies of the state or the act of God," and in support of this view he cites with approbation a remark of Mr. Balmanno, the editor of Jones on Bailments, to the effect that in the case of bailees other than common carriers, it is inconsistent with legal principles to presume that they acted contrary to the trust reposed in them. In *Schmidt* v. *Blood*, (9 Wend., 271,) Justice Sutherland said that in an action against a warehouseman the *onus* of showing negligence seems to be upon the plaintiff unless there is a *total default in delivering or accounting for the goods*, and in *Foot* v. *Storrs*, (2 Barb., S. C., 329) WILLARD, J., reverses the instruction given by WALWORTH, C. J. in *Platt* v. *Hibbard*, supra; and says that the rule in this State is believed to be otherwise. In his opinion, as the bailee is bound only to ordinary care, the plaintiff must give some

evidence of the want of it, and cannot recover upon mere proof of the loss, but he gives no reason and refers to no authorities. The question has been more fully examined in the Courts of Pennsylvania. In *Beekman* v. *Schown*, (5 Rawle, 189) ROGERS, J. says, "It is necessary for them (bailees for hire) to show why they have not performed the contract. In the absence of all proof of loss, they lay themselves open to the imputation that the property is still in their possession, or in the possession of their agents, or has been embezzled by them, and in either case, it is clear that they would be liable to the plaintiff. . . . It is true that where a loss has been proved, ordinary care in the carrier is presumed, and the *onus* is thrown upon the plaintiff, but all a plaintiff has to do in the first instance is to prove the contract and the delivery of the goods, and this throws the burden of proof that the goods were lost upon the carrier, * * * * a salutary principle, for otherwise owners and employees would be at the mercy of bailees who would rely upon a failure to perform the contract as a complete indemnity against the suit of the bailors. I cannot see how," he says, " in the absence of any proof as to the manner in which the loss occurred, the plaintiff can do more than rely on the fact of the non-delivery of the goods as evidence of the want of ordinary care on the part of the carriers or their agents." In *Clark* v. *Spencer* (10 Watts, [Penn.,] 337) the question came again before the Courts of Pennsylvania. The defendant proved the loss of a trunk, to recover the value of which the action was brought, but his witness having left it doubtful whether the trunk was stolen or delivered to a wrong person, DALLAS, C. J. told the jury that under the circumstances the burden of proof was on the defendant. This ruling was approved upon appeal, and in delivering the judgment of the Court, ROGERS, J., adverted to the view of the law taken by Chancellor WALWORTH in *Platt* v. *Hibbard*, and was of opinion that it ought to be the rule, but thought from the cases cited at the bar, that it was contrary to the current of authority, and declared the rule to be that " where a loss has been proved, or where goods are injured, the law will not intend negligence. The bailee is presumed to have acted according to his trust until the contrary is shown. But to throw the proof of negligence on the bailee it is necessary to show, by clear and satisfactory proof, that the goods were lost and the *manner in which they were lost*. All the

bailor has to do in the first instance is to prove the contract and the delivery of the goods, and thus throw the burden of proof that they were lost, and the *manner in which they were lost*, on the bailee, of which we have the right to require very satisfactory proof."

The only point of difference between these cases would seem to be whether when goods stored or deposited with a bailee for hire are lost or injured, it is incumbent upon the bailee to show that he took proper care of them, or whether, when the manner in which they were lost or injured has been shown, it is to be presumed that he did his duty until the contrary appears. I confess, I think the point of difference of little practical value, as the question upon whom is the *onus*, may depend upon various considerations, such as the nature of the bailment, the form of the action, or the stage of the case at which the question arises. "The chief difficulty," says Mr. Bell in his Commentaries, "in such cases, lies in the evidence." (1 Bell Comm., 454.)

If the action is trover, a wrongful conversion of the property must be shown to maintain it. If it is an action on the case for negligence, the plaintiff must make out a case of negligence, as that is the gist of the action; but a bailee for hire may be sued in assumpsit (*Hutton* v. *Britton*, 1 H. B., 298, note *Cairns* v. *Robbins*, 1 Mees. & Wels., 258,) and all that the plaintiff would have to show in assumpsit would be the non-performance of the contract, to cast upon the bailee the *onus* of showing why it had not been performed. We are relieved by the Code of any difficulty that might arise from the form of the action, as we have now but one course of procedure whether a plaintiff sues for the non-performance of a contract or for injuries to property, and all that is necessary is, that it should appear by his complaint, that he has a cause of action entitling him to either legal or equitable relief.

An examination of the numerous English cases upon this subject, leads to no very satisfactory result as to the rule or principle to be extracted from them. (*Clay* v. *William*, 1 H. Bl., 298; *Harris* v. *Packwood*, 3 Taunt., 264; *Marsh* v. *Horne*, 5 B & Cr., 322; *Finucane* v. *Small*, 1 Esp. R., 314; *Cailiff* v. *Danvers*, 1 Peake, N. P. R., 155; *Brind* v. *Dale*, 8 C. & P. 207; *Gilbert* v. *Dale*, 5 A. & E., 543; *Thomas* v. *Day*, 4 Esp.,

R., 262; *Hodgson* v. *Fullerton*, 4 Taunt., 787; *Cooper* v. *Barton* 3 Camp., 5 note; *Clark* v. *Earnshaw*, 1 Neil Gow, 30; *Sidaways* v. *Todd*, 2 Starkie, 400; *Hatchwell* v. *Cooke*, 6 Taunt., 577; *Ross* v. *Johnson*, 5 Burr., 2825; *Forward* v. *Pittard*, 1 Term R., 33; *Garside* v. *Trent. Nav. Co.*, 4 id., 581; *Mythar* v. *Cooke*, 2 Stra., 1099.)

In nearly all of them, the way in which the loss or injury happened was either shown by the plaintiff or by the defendant, or circumstances were shown warranting a presumption as to the manner in which it occurred, and as the cases are reported, the question passed upon by the Court would seem generally to have been whether, under the circumstances of the particular case, the loss or injury was attributable to the defendant's negligence or not. It would not repay the labor to go over these cases in detail, and I shall refer only to those in which there was no evidence as to the manner of the loss. In *Finucane* v. *Small*, (1 Esp. R., 318,) which was an action on the case, the plaintiff left a trunk with the defendant to be kept for a reward, and when it was returned to the plaintiff, the whole of the contents were gone. Lord KENYON said that to support such an action, positive negligence must be proved, and as it appeared that the trunk was put in a place of security, where things of greater value were kept, he nonsuited the plaintiff. In *Cooper* v. *Barton* (3 Camp., 5, *note*,) which was assumpsit, the defendant hired a horse of the plaintiff, which was returned with his knees broken in consequence of a fall. It was held that this was not sufficient evidence of negligence, and the plaintiff was nonsuited. These were nisi prius cases, and in respect to the first of them, it may be said that there was evidence of the manner in which the trunk was kept, and probably sufficient to show ordinary diligence in such a case, and in respect to the last, that it did not follow that the fall of the horse and the consequent injury, was necessarily the result of negligence on the part of the defendant.

*Cairnes* v. *Robbins & Mills*, (8 Mees. & Welsb. 258, E. T. 1841,) a more recent case than any of the foregoing, was the loss of a package from a warehouse. The action was assumpsit. It was averred that the defendant, for a reasonable compensation, promised that he would *safely* and *securely* keep a pack-

Arent v. Squire.

age of the plaintiff:—Breach, that through the carelessness, negligence, and improper conduct of the defendant, the package was wholly lost to the plaintiff. Plea, non assumpserunt, and that it was not lost through the carelessness, negligence or improper conduct of the defendant. The package had been carried by the defendants' wagon from Lancashire to London, and delivered to the plaintiff, who sent it back to the defendants' warehouse, with instructions that it should remain there to await his order, and the report merely states that it was lost out of the warehouse. Upon the trial, it was objected that the defendants were mere gratuitous bailees, and therefore liable only for gross negligence, of which there was no proof; but it was held by all the Judges that they were liable as warehousemen, and judgment was entered against them for the value of the package. In a later case, *Rose* v. *Hill*, (2 Man. Gr. & Scott, 787,) the defendant was sued in assumpsit for the loss of a portmanteau. The plaintiff hired a cab, which was driven by the defendant's servant, to convey him from a railroad terminus, and a portmanteau, containing his wearing apparel, was lost from the roof of the vehicle. The averment in the declaration was that the defendant agreed to convey the plaintiff and his luggage *safely* and *securely* from the railroad terminus to Bridge street in London. A learned discussion arose in this case upon the authorities and precedents, as to the legal import of the words "*safely* and *securely*;" whether they could be regarded as entering into the implied obligations of the defendant, who seems not to have been regarded as a common carrier, but as responsible only for ordinary diligence; and the Court were of opinion that they did. That the obligations which they imported, applied to all cases of bailment for hire, regard being had to the relative rights and duties of the parties, and the defendant was held responsible for the loss.

The rule of the Roman law, as I deduce it from Molitor, a comparatively recent commentator upon the law of obligations, is this: If the bailment is gratuitous, the bailee is liable only where the injury was intentional, or was the result of a negligence such as men do not ordinarily commit, or which was not habitual with him in the management of his own affairs, but

where the bailee undertakes the custody of a thing for reward, he is held to the care of a very diligent person, and if in discharge of his obligation, he alleges that the property is lost, he must prove the loss and that it was not imputable to him ; that it occurred through some fortuitous circumstances (*un cas fortuit*) which it is for him to explain or show. (*Les Obligations en Droit Romain, par J. P. Molitor*, §§ 110, 117, 815, 193, 199, 200, 205, 206, 207, 211, 212, 213, 293, *Tom.*, 1 *Gand.*, 1851.)

A bailment for hire is a contract in which the bailor agrees to pay an adequate recompense for the safe keeping of the · thing entrusted to the custody of the bailee, and the bailee agrees to keep it and restore it upon the request of the latter in the same condition substantially as he received it, unless it should be impossible to do so by reason of its injury, loss or destruction from causes for which he is not responsible. If the restoration of it to the owner or bailor has become impossible from any cause, it lies with the bailee to show it, for it is to be assumed that the one who has had the control and custody of the property is better able to account for its loss or injury than the one who has confided it to his keeping. If a pipe of wine, placed upon storage, is returned to the owner half empty, or if goods entrusted to a warehouseman who is paid for his care and trouble, are delivered materially damaged or injured, it is absurd to say that the. owner must bear the loss unless he can show how it occurred. It is sufficient for him to show that the property entrusted to the safe keeping of the warehouseman had not been restored to him upon demand, or has been returned injured or diminished in quantity, and if he who had it in charge can give no explanation of the circumstance, it is more consonant with reason and good sense to hold that the presumption is to be taken against him, than to dismiss the plaintiff's suit upon the loose, general presumption that every man is presumed to do his duty. All persons are presumed to have duly discharged any duty imposed upon them by law, (Best on Presumptions, 68,) a presumption allowed for the benefit of those entrusted with the discharge of public duties as well as for those interested in or affected by the discharge of them ; but whether a presumption of this nature is to be applied to private persons or not, must depend upon the circumstances of the particular case.

Arent v. Squire.

"No one," says Lord TENDERTON in *Rex* v. *Burdit,* (4 B. & A., 161,) "is to be required to explain or contradict until enough has been proved to warrant a reasonable and just conclusion against him in the absence of explanation or contradiction, and in drawing an inference or conclusion from facts proved, regard must always be had to the nature of the particular case and the facility that appears to be afforded either of explanation or contradiction," and to apply the remark of this eminent Judge to the case of a bailee for hire who returns the property committed to his care materially injured, or who fails to return all that was entrusted to him, without any explanation as to the cause of the injury or of the deficiency in the quantity, it is a more legitimate and natural inference to conclude that there was a want of proper care and diligence, than to presume that it was exercised. If it appear, as in *Garside* v. *Trent. Nav. Co.,* 4 T. R. 581) that the property was destroyed by a conflagration, or was embezzled by the bailee's servant without his connivance or knowledge, as in *Schmidt* v. *Blood,* (9 Wend., 268;) or was injured by rats, though many cats were kept in the warehouse, as in *Cailiff* v. *Danvers,* (1 Peake, N. P., 114,) or the warehouse had been broken open by thieves, as in *Platt* v. *Hibbard, supra;* or there are any circumstances, not proceeding from the bailee's negligence, which raise a reasonable presumption as to the manner in which the loss or injury occurred, the bailee is exonerated. But these are matters which the plaintiff should not be expected to prove, as they are peculiarly within the knowledge of the bailee, and should be shown by him in discharge of his obligation. This is the rule laid down by Pothier, where property is taken by way of pledge or security. "The creditor," he says, " is bound to return the property when the debt is acquitted, unless it has been lost without his fault. But the allegation that it has been lost will not suffice in discharge of his obligation. It is necessary for him to prove the accident which caused the loss, and that he could not prevent it," (Ouvres de Pothier, Tome 6, P. 252, ed., Paris, 1829, Traite du Contrat de Nantissement, chap. II., Art. 2,) and I cannot see why this rule is not equally applicable to a warehouseman, for in cases of pledge or pawn all that has ever been required since the days of Bracton, by the common law on the part of the pawnee, has been that

which is required of a warehouseman, the exercise of ordinary diligence. (Bracton, 99 b., *Coggs* v. *Bernard*, 2 Ld. Raym., 917, Anon. *Salk.*, 522.)

The rule deduced from the Roman law by the modern commentators, for neither the Institutes, the Pandects, nor the Code touch the precise question under consideration, does not seem to recognize the distinction that there may be bailees for hire, like warehousemen or wharfingers, who are bound only to ordinary diligence. This appears to have been first taken by Lord KENYON in *Cailiff* v. *Danvers*, (1 Peake, N. P., 155.) The distinction which he drew that a warehouseman who carries on the business of storing property for hire, does not, like a carrier, bind himself to insure the safety of the property entrusted to him, but simply that he will exercise ordinary diligence in its safe keeping, has been uniformly acted upon since, both in this country and in England. This distinction must be kept in view in adopting any general rule; and giving due weight to it, I think the following rule may be laid down without directly conflicting with the authority of any adjudged case, either in this country or in England, namely— that with the exception of common carriers and inn-keepers, who are held to extraordinary diligence, any one who takes charge of property for hire, is bound to make good any loss not proceeding from the inherent nature of the thing itself, such as absorption, deterioration, or like cause, unless he can show that it occurred under circumstances exonerating him from all blame; or, if he cannot do that, that he exercised a degree of care in its safe-keeping that would presumptively repel any suspicion of the loss having occurred through his negligence or dishonesty.

Applying this rule to the case before us, I think that it was incumbent upon the defendants to account for the loss of the missing gin, or purge themselves of all suspicion in the premises. They proved that the two casks were stored in a loft, to which nobody had access but themselves and their employees. If that were the case, they should have gone themselves upon the stand, and testified that they had no knowledge of the manner in which the gin had been extracted from the casks, and brought their employees also to testify that they knew no-

Arent v. Squire.

thing of the way in which it had been taken. This was especially requisite on their part, as there was evidence in the case from which it was fairly inferable that the two pipes had been recoopered in their loft, but by whom, or for what purpose was not shown. Instead of doing this, they merely showed that the two pipes were stored in the same way as other property in their loft—and upon this, with some evidence as to the trustworthiness of their porter and clerks, which amounted to nothing more than the opinion of their out-door clerk, and evidence of the manner in which the two casks were delivered from their warehouse, they rested; relying upon the legal objection that it was incumbent upon the plaintiff to show that the loss occurred through their negligence, or upon the presumption that the gin was drawn from the casks after they had been taken from their warehouse. Upon this point the Justice found against them, and upon the evidence he could not well have found otherwise, for the plaintiff did what the defendants did not, he repelled, by the positive evidence of all who had charge of the casks, any presumption of the gin having been extracted from them from the time they were delivered to his cartman until the loss was discovered.

The case furnishes a good illustration of the propriety of the rule that the burden should be on the bailee of showing how the loss or injury happened. To hold otherwise, would be to give immunity to fraudulent, negligent, or dishonest bailees. It would enable them to rely on the legal presumption that they did their duty, trusting to the difficulty or impossibility of the plaintiff's establishing that the loss was occasioned by their negligence or dishonesty. Without meaning to impute any improper acts or motives to the defendants in this case, it is enough to say that the obligation was upon them to account for the loss of the gin; that the plaintiff proved all that he could be expected to prove under the circumstances, and that sufficient was not shown on their part to exonerate them from liability.

Judgment affirmed.