## PATRICK FOX *v.* JOSEPH S. PRUDEN.

A bailee for hire of a chattel is bound to use ordinary care in its use, and if it is injured while in his possession, he must show how the injury happened, or if unable to do that, must show that he exercised such a degree of care in respect to the chattel as to overcome any presumption that the injury occurred by reason of the want of ordinary care and diligence on his part.

If, in the case of a bailment, the evidence warrants the conclusion that the transaction was not a hiring but a gratuitous loan for a specified time, it is not error for the court to charge the jury that the keeping of the chattel after the expiration of the time for which the loan was made and after demand by the bailor, was a conversion. So *held* in an action for negligence, by reason of which the chattel was injured.

The return of a chattel, loaned or hired, and its acceptance by the bailor, is not a bar to the latter's action against the bailee to recover damages for an injury to the chattel.

APPEAL by the defendant from a judgment of the Marine Court, entered on the verdict of a jury.

The action was brought to recover damages for an injury to the plaintiff's mare, by reason of the defendant's negligence. The complaint alleged the loan of the mare by the plaintiff to the defendant, but the answer denied the loan and the negligence, and averred that the mare had been hired by the plaintiff to the defendant.

It appeared on the trial that the defendant, desiring to hire a horse for use in his business, applied to the plaintiff for one, but the latter had but one horse which he could spare at the time. This horse he consented to let the defendant have for

temporary use, on condition that it should be returned by noon of that day. No agreement was had as to any price for the use of the horse. The defendant failed to return the horse at the time agreed on, though requested to do so, but retained possession until the morning of the fourth day. On the previous evening, while standing in defendant's stable, the horse had been seriously injured by running a nail into one of his feet, and, when returned to the plaintiff, was worthless.

It appeared on the trial that the defendant kept a general hardware store in the Eighth avenue, and that one of his men, Peters, drove the horse for two days, delivering goods in a wagon in the morning and going down town for goods in the afternoon. Iron, small goods, general hardware, and sometimes nails were carried in the wagon, and when the horse was put up at night, the wagon was left standing in front of the store. The floor of the stable had been repaired about a week before the accident with new boards, and outside of the stable a few old pieces of lumber were lying around. The witness, Peters, was asked, "Was there any nails lying around, or hardware?" which he did not answer categorically; but replied, "We do not use any hardware there." The stable was upon 51st street near the Eighth avenue, and the defendant's hardware store was upon the Eighth avenue, between 50th and 51st streets. The horse was put in the stable at night, at the end of the second day, and was not then lame, but, in the language of the witness, "Was all right." He put her in the stable and bedded her down with straw, which, as he testified, he got from a feed store; but the plaintiff testified that Peters told him that he put some straw under her which he got from the defendant's hardware store. When Peters went to the stable in the morning, he found the horse standing upon three feet, and when he went to feed her, he found she could not stir. She had a rusty sixpenny nail in her foot, which the horseshoer found had penetrated to the coffin of the foot, an injury so serious that he advised the plaintiff to shoot the animal, telling him that ninety-nine horses out of a hundred were not good for anything afterward. The plaintiff testified that Peters told him that it was from the straw which he had brought from the defendant's hardware store, that the

mare took the nail, which Peters, when on the stand, denied that he had said. On discovering the accident, he drew the nail out, and the horse was returned to the plaintiff.

The court charged the jury that if they were satisfied that the horse had simply been loaned, and that it was to be returned at a specified time, then that the keeping of the horse by defendant, after the expiration of the time for which the loan was made, was a conversion; but that if they were satisfied that the transaction was a hiring, then they must also be satisfied that the defendant did not exercise ordinary care with regard to the horse. The court further charged that the return of the horse, and its acceptance by the plaintiff, was not a waiver of the plaintiff's right of action, but that they might consider that fact on the question of damages.

The jury rendered a verdict for the value of the horse. The defendant appealed.

*Cooper & Roe*, for appellant.

*Stephen D. Stephens, Jr.*, and *George Shea*, for respondent.

By THE COURT.—DALY, F. J.—Assuming as the testimony would seem to warrant, that this was a bailment for hire, the defendant was bound to ordinary care and diligence, and if the horse was injured whilst in his possession, the obligation was upon him to show how the injury happened; and if unable to do that, to show that he exercised that degree of care of the animal which would overcome any presumption that the injury occurred from the want of ordinary care and diligence on his part (*Arent* v. *Squire*, 1 Daly, 347).

It is apparent upon the evidence, that the injury must have happened in, or in the vicinity of, the defendant's stable. If the mare was uninjured when the witness, Peter, left her, it must have occurred in the stable. As the floor of the stable had been newly laid, some of the old nails of the former floor may have been lying about, or a rusty nail attached to the old pieces of lumber which were lying around, outside of the stable, may have penetrated the mare's foot as she was brought into the stable; or if the straw, which composed her bed, had

been brought from the hardware store, the nail which entered her foot may have been in that. The accident may have occurred from any one of these causes, and the existence of any one of them would warrant the jury in finding that there was a want of ordinary care and diligence on the part of defendant. The judge told the jury that if they were satisfied from the evidence that it was a bailment for hire, that then they must be satisfied, affirmatively, that the defendant did not exercise ordinary care in the charge of the animal, which was charging as strongly in the defendant's favor as he was entitled to.

If the evidence warranted the conclusion that this was a gratuitous loan, then the judge was justified in stating to the jury that if the horse was loaned for a specified time, and at the end of that time a demand was made for it, then it was a conversion. The plaintiff testified that he told the young man when he gave him the mare, that she had to work that night, and that he must bring her back at twelve o'clock; that she was not brought back at the time, and that he went and saw the defendant, and being told that she was down town, that he said to the defendant that she must be home by four o'clock, as she had to go out with the sweeping machine. It then became the duty of the defendant to return her before that time, for at four o'clock the bailment was at an end, and the detaining of her after that time, against the plaintiff's consent, was a wrongful act. She was not returned at that hour, but on the contrary the defendant used her the whole of the next day. He kept her in fact until the fourth day, and then returned her disabled and useless. This was clearly a conversion (*Bryant* v. *Wardell*, 2 Exchq. R. 479; *Put* v. *Rowsterne*, T. Raym. R. 472; *Lashmere* v. *Toplady*, 2 Vent. 170; *Lucas* v. *Trumbull*, 15 Gray, 310; *Porter* v. *Foster*, 7 Shep. 391; *Ripley* v. *Dolbier*, 6 *Id.* 382; *Hart* v. *Skinner*, 16 Verm. 138; *Spencer* v. *Pilcher*, 8 Leigh. 565; *Horsley* v. *Branch*, 1 Hump. 199; Bullas N. P. 46; 1 Danv. Abm. 21). The action was not for a conversion, but for loss and injury arising through the defendant's negligence; and it was through his negligence and want of diligence in not returning the horse when the bailment was at an end, that the injury arose in the way that it did, for had

the animal been returned at the time specified, it would not have happened (*Johnson* v. *Weedman*, 4 Scam. 495).

Nor was there any error in instructing the jury that the plaintiff's right of action was not waived by his accepting the animal when it was brought back to him; that the circumstance merely went in mitigation of damages (*Murray* v. *Burling*, 10 Johns. 176; *St. John* v. *O'Connell*, 7 Port. 466). "If a man ride my horse," says Justice Buller, "I may have an action against him, for the riding is a conversion, and the redelivery will only go in mitigation of damages" (Buller's *Nisi Prius*, p. 46).

The judge's comment upon Peter's testimony was warranted by the evidence. As he was the one that drove the defendant's wagon, it had some bearing upon the defendant's and his own statement that the plaintiff loaned the defendant a bay horse, the plaintiff having testified that he never loaned or gave the defendant any other than the gray mare; that the defendant never had two horses from him either at different times or at the same time. The other exceptions taken are disposed of in the observations already made.

The judgment should be affirmed.

Judgment affirmed.