(8 Misc. Rep. 452.)

## NICHOLS v. BALCH.

(Superior Court of New York City, General Term.   May 7, 1894.)

BAILMENT—INJURY TO CHATTEL—EVIDENCE.

Where a person, with a view to purchasing a horse, takes it out for trial, and returns it in a damaged condition, he must show that the injury was without fault on his part, or that he used such ordinary care as to justify an inference that the injury was unavoidable.

Appeal from judgment on report of referee.

Action by William E. Nichols against Henry H. Balch. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before SEDGWICK, C. J., and FREEDMAN and McADAM, JJ.

Frederick W. Sherman, for appellant.

Edward F. Dwight, for respondent.

SEDGWICK, C. J.   The action was for damages from the negligence of defendant.   The plaintiff was the owner of a horse, kept by him at Dickel's stables, in Seventh avenue, near Fifty-Ninth street.   There was a talk between plaintiff and defendant concerning the possible sale of the horse.   The defendant said: "I am in need of a horse for my use in troop A; and, if the horse suits me, I will either buy or rent it."   The plaintiff thereupon delivered the horse to defendant, to be tried and tested by him.   The horse was returned to the stable with the larger bone of a leg, below the knee, broken.   It became necessary, in a short time, to kill him.   The action was for the value of the horse, and expenses.   The referee found for the plaintiff.

The defendant, when a witness on the stand, testified that, on riding the horse, he was excited, naturally, at first,—particularly, going under the elevated roads; that it took some time to get him under them; that he caused him a good deal of trouble at almost every bicycle he met; that they met a good many of them up to Claremont; that if they came too near he would rear, and he reared frequently; that between the bicycles the witness would quiet him by caressing him, and then, when he met a bicycle, he would rear again; that he kept that up "more all the way up than he did coming back;" that, at four or five miles from starting, he jumped him over a fence two or three feet high; that the horse did not strike or injure himself any way, so far as the witness recollected; that he rode to Van Cortlandt park, turned, and came back through the Central park; that when the horse was about two-thirds of the way home he began to do nicely; that about one mile from the stables the witness perceived that the horse was lame, and he dismounted and led him to the stable.   On cross-examination the witness testified, in answer to the questions:

Q. When you saw the horse getting frightened at the bicycles, why did you not take him off into some side road?   A. That is not the way I do when I ride a horse.   Q. No matter what he did, you would still keep on the ride?

A. I would either conquer him, or he would me. Q. Even at the expense of hurting the horse? A. Yes. Q. Ruining him? A. Yes. Q. Do you think you conquered the horse? A. Yes.

He testified, also, that the ride was about 16 or 17 miles long, and that at Van Cortlandt park he put on a curb bit, in case the horse should run away. The witness did not go to see the horse for two days, and did not communicate with the plaintiff until the same time. He said it was not necessary for a troop horse to be able to jump, but very desirable.

The referee was supported by testimony in finding that the horse had been ridden many times in the streets, in the park, and in the ring of the stables, and had not manifested the unsteadiness and fractiousness shown on the ride taken by the defendant. There was evidence that the horse had been spirited, kind, and docile. It had been used out of the stable two or three days before the accident. There were witnesses who testified that a horse might suffer wounds and fracture in the hands of a careful driver, who might not know or perceive such occurrences at the time, or for some time afterwards. The evidence was subject to sifting by the referee, in order to know its substance. The referee might competently find that such a thing occurred so very rarely that it was not probable that it occurred in this particular case, or, on the other hand, that the defendant subjected the horse to circumstances which he should have known were likely to lead to an accident, at one point or another, which might turn out to have been unknown to him at the time. A veterinary surgeon testified that a fracture might be caused by a horse rearing and plunging upon a hard pavement, if the "pounding" were heavy, and that the causes of fracture were violent efforts, jump, slip, and sudden muscular contraction. The plaintiff had raised, broken, and ridden horses all his life. The referee was justified in finding that, before the horse was taken out by the defendant, he was a spirited, docile, and kind horse. He was not vicious. The counsel argue that the defendant, in using the horse, was bound to use ordinary care, and such care and attention as an ordinarily prudent man gives to his own property under the circumstances. An unpaid agent is bound, however, to use such skill as he is shown to possess, and is guilty of culpable negligence if he does not. Wilson v. Brett, 11 Mees. & W. 113, cited in Coggs v. Bernard, 1 Smith, Lead. Cas. 356, and elsewhere in the same leading case. At page 421 of the same volume, it is said that if a hired article is returned in a damaged state, and the hirer will give no explanation or account of the injury, there is an implication of negligence, and the burden of disproving it is on him. Logan v. Mathews, 6 Pa. St. 417. The referee was right in deciding that the defendant should account for the accident that caused the injury, and that it was without fault on his part, or that he should comprehensively prove that he used such ordinary care that the proper inference would be that the injury was unavoidable. When, prima facie, the injury did not probably occur when due ordinary care was taken, the burden of proof was upon the defendant to show, if possible, that he had taken the proper care. It was claimed

that it appeared that the nature of the injury showed that it might occur if care was taken in the management of the horse. This presented a question of fact. The evidence did not compel the referee to find that this particular kind of fracture might occur, in the usual course of things, without any want of care, and the fracture not be known to the rider. The manner in which the defendant gave his evidence, the shape or form of the testimony, were things which the referee might consider. For instance, the defendant was asked, "Q. So far as you know, did the horse injure himself in ·any way?" His answer was, "Not as I recollect it." Collins v. Bennett, 46 N. Y. 490; Fox v. Pruden, 3 Daly, 187. The defendant did not prove how or where the injury to the horse occurred. He did not prove that he used such reasonable care that the injury must have occurred in spite of that. The evidence on these subjects may have been conflicting, and the inferences from the testimony may have been diverse. There is nothing in the case that shows that the findings of fact were erroneous, as matter of law. The referee might properly find that in the first part of the ride such excessive fractiousness was shown, and was continued, that it was not prudent to extend the trial that was allowed by the owner for the purpose ·of defendant's ascertaining the character of the horse. It was not within the intention or purpose of either of the gentlemen that the trial should be of whether the defendant could conquer the horse or not. Up to a certain time, it would be the case that it was doubtful as to what would be the future conduct of the horse; but the referee could find that, beyond that, it might or should have appeared that to continue, and to take the horse further, in his ·excited and unruly state, was to increase the danger to the horse beyond ordinary prudence. With the knowledge of the chances ·of accidental, and at the same time unknown, hurt to the horse, common prudence might have required that the horse should have been ridden home, and not be subjected to the dangers of a long course. On the whole the referee might have competently found that the defendant did not use the ordinary prudence of an owner in riding and managing the horse, and that, by the preponderance ·of the evidence, this want of prudence occasioned the injury to the horse. Judgment affirmed, with costs. All concur.