[No. 36867. Department One. April 30, 1964.]

E. LOGAN McGINNESS, *Appellant,* v. HUGH GOSSMAN *et al., Respondents.**

*Davies, Pearson, Anderson & Pearson,* for appellant.

*Campbell & Manning,* for respondents.

ROSELLINI, J.—The respondent Hugh Gossman, a Puyallup pharmacist who was also engaged in the cattle-raising business, ordered two Charolais heifers and a bull from the appellant, whose ranch is in Missouri. In expectation of their arrival, he built two corrals at his farm 5 miles from Puyallup. He had been advised of the approximate

*Reported in 391 P. (2d) 967.

date of arrival of the animals, which were being transported in a truck driven by an employee of the appellant.

On Monday morning, April 25, 1961, the truck driver called the respondent from Oregon and advised him that the truck would arrive that evening. He was instructed by the respondent to proceed to the respondent's place of business in Puyallup. That same afternoon, the respondent went to his farm where he directed an employee in painting the corrals with a paint stain which he had mixed himself. Before the painting was finished, he returned to his place of business in Puyallup.

The truck arrived after dark that evening. The respondent suggested to the driver that he park the truck in his parking lot for the night, but the driver stated that the cattle should be taken off the truck and fed and watered after their long haul. Accordingly, they went to the farm where the animals were unloaded into one of the corrals, which was equipped with a loading chute. The driver told the respondent that a second bull which was in the truck should be kept separated from the respondent's animals, because he was a much larger animal and might injure them. This bull was to be delivered to a purchaser in Oregon. To effect this separation, the animals ordered by the respondent were put in the second pen.

A neighbor who had come to watch the unloading called the attention of the respondent and the driver to a bucket of liquid. It was quickly removed, and the respondent told the driver that the pail contained paint stain, but said he did not think the cattle would drink it. The two were concerned nevertheless that the animals might have drunk some of the paint stain and stayed at the corrals observing them for almost an hour. During this time, they saw no sign of illness.

Early the next morning, the respondent went to the farm and found the two heifers dead. An autopsy revealed that they had died of poisoning, as a result of having consumed some of the paint stain. The respondent notified the appellant that he rejected the shipment, because the heifers had ringworm and the bull was infested with lice. The bull was

returned to the appellant's ranch. He brought this action for the reasonable value of the heifers, contending that their death was the result of negligence on the part of the respondent.

The trial court found that the respondent's negligence did not cause the death of the heifers, because they had been put in the second corral at the instance of the appellant's driver. The court found that the deaths were the result of negligence on the part of the driver in bringing the cattle to the farm in a condition of extreme thirst, in requiring that they be placed in a separate pen, and in failing to call a veterinarian when he became aware that they might have consumed some of the paint stain. It was also stated by the court in its memorandum decision that if the paint had been left in the first corral, which was the receiving corral, the court would have been inclined to grant judgment for the appellant, but that "under the circumstances, . . . Gossman, or his employee, could not foresee that the pen where the pail was left would be used." In accordance with these findings, judgment was entered in favor of the respondent.

 It is conceded by the appellant that this was a sale on approval and that title had not passed. The rule is that a buyer is liable for the purchase price, where he is unable to return the goods due to their loss through his fault or negligence. *Mann v. Trabue*, 1 Mo. 709 (1827); *Nichols v. Balch*, 8 Misc. 452, 28 N. Y. S. 667 (1894). Where personal property is delivered upon the understanding that it will be returned if it is not satisfactory, a bailment is created. 8 Am. Jur. (2d), Bailments § 33, p. 940. If a bailment is for the mutual benefit of the bailee and bailor, as is the case here, the bailee has a duty to exercise ordinary care to see that the property is not damaged or destroyed. *Jones v. Warner*, 57 Wn. (2d) 647, 359 P. (2d) 160. Brown, Law of Personal Property (2d ed.) § 81, p. 319. Ordinary care is that care which men of ordinary prudence customarily take of their own goods of a similar kind and under similar circumstances. *Preston v. Prather*, 137 U. S. 604, 34 L. Ed. 788, 11 S. Ct. 162 (1891).

While it does not purport to define the buyer's duty of care, RCW 63.04.090 (1) contains an implicit recognition that such a duty exists. It provides:

"Where there is a contract to sell specific goods, and subsequently, but before the risk passes to the buyer, *without any fault on the part of the seller or the buyer,* the goods wholly perish, the contract is thereby avoided." (Italics ours.)

The respondent does not dispute the applicability of these rules of law, but maintains that the trial court properly found that the loss was not caused by his negligence.

The appellant, however, challenges the trial court's findings, asserting that they are not supported by the evidence. Our examination of the record reveals that the appellant is correct. There was evidence that the animals had not been watered in 24 hours, but there was no evidence that this was an unreasonable length of time. Assuming, however, that the driver was negligent in allowing the animals to become thirsty, that negligence was not a proximate cause of their death. The animals died because they consumed a poisonous substance left in the corral by an agent of the respondent, and the evidence established beyond cavil that it is dangerous to leave poisonous liquids where they may be reached by cattle, since cattle are unpredictable and will sometimes drink such substances. Especially is this true when they are in an excited state, which they usually are after a journey. The respondent had been in the cattle business several years and was aware that the paint stain was poisonous to cattle.

There was no evidence that the driver was aware of any facts which would enable him to foresee that the corral would contain a bucket of poison, either when he asked that the animals be unloaded for the night or when he asked that the large bull be separated from the smaller animals. There was no evidence that either of these requests was unreasonable under the circumstances. There was no evidence that he was advised that the corrals had been painted that day, until after the bucket of stain was discovered.

And there was no evidence that a veterinarian, had one been called, would have been able to save the animals.

On the other hand, the respondent knew that the corrals had been painted that afternoon, and it was his expectation that the animals would be placed in the corrals. The trial court's finding that he did not anticipate that the second corral would be used, is contrary to the evidence. It is true that, had it not been used, the loss would not have occurred. Not only was it foreseeable that the corral would be used, but it was built to receive these very cattle. It was also foreseeable that the cattle might be poisoned if the paint stain was not removed before their arrival. We are of the opinion that the undisputed evidence establishes the fact that the loss was attributable to the negligence of the respondent and his employee.

The appellant does not suggest that he is entitled to the full purchase price, but concedes that a deduction should be made in view of the fact that the heifers were infected with ringworm. The trial court did not make a finding of the amount by which this condition of the cattle reduced their market value. Consequently, the cause must be remanded with directions to determine the amount of appellant's damages and enter judgment accordingly.

The judgment is reversed and the cause remanded.

OTT, C. J., HILL, HUNTER, and HALE, JJ., concur.