## MERWIN *against* BUTLER.

Where the defendant, who was a common carrier, received from the plaintiff a package of money, to convey it from *S.* to *P.*, and deliver it at the bank in *P.*; it appeared, that when the defendant arrived at *P.*, the bank was shut; that he went twice to the house of the cashier, and not finding him at home, brought the money back, and offered it to the plaintiff, who declined to accept it; and that the defendant then refused to be further responsible for any loss or accident; it was held, that, in the absence of any special contract, (none being proved in this case,) these facts did not constitute a legal excuse to the defendant for the non-performance of his undertaking.

THIS was an action of *assumpsit* against the defendant, as a common carrier, for a breach of his undertaking, in that capacity, to convey a package of money belonging to the plaintiff, from *Sherman* in this state to *Poughkeepsie* in the state of *New-York,* and to deliver it to the *Farmers and Manufacturers' Bank* in that village.

The cause was tried, on the general issue, at *Litchfield*, *August* term, 1844, before *Williams*, Ch. J.

The plaintiff claimed to have proved, that the defendant was a common carrier of goods, packages and moneys, on the road leading from *New-Milford* to *Poughkeepsie*; and that the plaintiff delivered to his agent, the stage-driver, a certain package of money, to be delivered to the cashier of the *Farmers and Manufactruers' Bank*, at *Poughkeepsie*, for a reasonable reward then paid to him; which he had failed to do.

The defendant denied all the facts charged in the declaration; particularly, that he was a common carrier and was accountable for the acts of the driver.

In the progress of the trial, the defendant claimed, that the package in question was received under a contract, that the carrier should incur no responsibility for any loss or accident. He further claimed, that when the driver arrived at *Poughkeepsie*, the bank was shut, and he went twice to the house of the cashier, and did not find him at home, and brought back the money, and offered to return it to the plaintiff, who declined to accept it; and that the carrier then again refused to be responsible for any loss or accident. These facts being proved, the defendant claimed, that the plaintiff was not entitled to recover for any loss or accident which had occurred.

The plaintiff claimed, that if the defendant was a common carrier, he could not limit his responsibility in this manner.

The court charged the jury, that when the contract was entered into, the parties might, by their agreement, limit and restrain the liability of the common carrier; but that after the contract was made, the carrier had no right to refuse to execute it, or limit his responsibility, unless with the consent of the other party; for, as it required two at first to make the contract, it required two to rescind it.

Under this charge the jury returned a verdict for the plaintiff; and the defendant moved for a new trial for a misdirection.

*Ellsworth* (with whom was *Sterling*,) in support of the motion, contended, That the charge was wrong or wholly inapposite, relative to the duty of the carrier, under the cir-

cumstances of the case.   No special contract being found, the question is, whether the carrier had performed the contract which the law implies from the capacity in which he acted.   This was nothing more nor less than to conduct *faithfully* and *prudently* ; and this he did.   He carried the money to the bank, and did all that he could do, to deliver it there ; but was prevented, by circumstances not under his controul, and for which neither he nor his employer can be responsible.   There was no want of *faithfulness* here.   Did he not act *prudently* also ?   When he found that he could not deliver the package according to his instructions, what safer course could he take than to bring it back to the owner ?   He had then done his whole duty; he had fulfilled the implied contract on his part ; he had no compensation for keeping the money any longer.   If his employer was an insurer, the insurance was then out.   This was the claim made by the defendant, on the trial.   How was it met by the charge ?   Instead of submitting to the jury the question whether the carrier had thus conducted, and laying down the law applicable to such a case, the judge told the jury, that the defendant could not limit his responsibility, without the plaintiff's consent; that as it required two to make a bargain, it required two to rescind it.

*Seymour*, contra, insisted, That the charge was both correct and apposite.   Taking the whole motion together, it is apparent, that the defendant placed his defence upon a special contract, restricting his liability as a common carrier, made either before the transportation was commenced, or when the package was brought back to the plaintiff.   This was the great point in controversy.   On the first branch, the court charged the jury in conformity to the defendant's claim. Here he has nothing to complain of.   We come then to the other branch.   Now advert to the facts claimed by the defendant : that the driver had carried the package to *Poughkeepsie ;* that when he arrived there, the bank was shut ; that he went twice to the cashier's house, and did not find him at home ; and that he then brought the package back, and offered to return it to the plaintiff, who *declined to accept it ;* while the driver declared that he would not be responsible for any loss or accident.   Here the court pertinently re-

*Litchfield,*
June, 1845.

Merwin
*v.*
Butler.

marked to the jury, that this would not do ; the defendant must go further, and show that the *plaintiff agreed* to this ; for it requires two to make or rescind a contract.

But suppose the great question on the trial to have been, whether the facts claimed by the defendant were a sufficient excuse for not delivering the package ; and the judge did not say any thing to the jury on that question. It is clear, that this omission would be no ground for a new trial, unless those facts constitute a sufficient excuse. Are they such ? It does not appear *when* the driver arrived at *Poughkeepsie.* He might have got drunk on the road, and not have arrived until an hour when the bank is always shut, and the cashier asleep. Calling twice, under such circumstances, would not avail much. At any rate, he might have delivered the package *afterwards,* either the next morning, or the next time he went to *Poughkeepsie.* It is sufficient to say, what seems too clear for argument, that no act of God, (or inevitable accident) of the public enemy, or of the bailor himself, is here shown, which prevented this driver from delivering the package in question according to his undertaking.

HINMAN, J. From the facts stated in the motion, in connexion with the charge of the court, and the finding of the jury, it must be assumed, that the package of money in controversy, was delivered to and received by the defendant, as a common carrier, to carry and deliver to the cashier of the bank at *Poughkeepsie ;* and that there was no special contract between the parties, limiting the responsibility of the defendant, as such common carrier. The only question then, is, whether the defendant is excused from the performance of his contract to deliver the money to the bank, because he went there twice, and, at each time, found the bank shut.

That there may be circumstances, which would excuse a carrier from the delivery of a package, is doubtless true ; but there is nothing stated in this motion, that ought to have that effect. That the bank was shut, when the carrier went there, can amount to nothing, unless it appeared further, that he went there at a proper time, during the ordinary business hours ; and even then, we could not say, as matter of law, that this would be a legal excuse. It would depend upon the degree of diligence which the carrier used, to let the officers of the

bank know that he had a package to deliver there. No question of this sort was raised, on the trial below; nor does it appear, that there was any foundation on which it could have been.

We are satisfied, therefore, that the case was properly disposed of, and do not advise a new trial.

In this opinion the other Judges concurred, except STORRS, J., who was absent.

New trial not to be granted.