CARL KLEIN v. THE HAMBURG AMERICAN PACKET COMPANY.

In the absence of proof of any contract on the part of a common carrier to carry a passenger and his baggage to a particular place or city in the port of destination, it must be assumed that the carrier undertook to transport the passenger and his baggage to the place in the port of destination, fixed by the established usage and custom of the carrier.

The plaintiff was a steerage passenger on board of the defendant's steamer from Hamburg to New York. On arrival in the latter port, the vessel terminated her voyage at Hoboken, opposite the city of New York, that being the place where, according to the established usage and custom of the defendants, all their passengers and their baggage were landed. At that place, the plaintiff's baggage was placed on the pier, was opened by the plaintiff for examination by the customs' officer, and was then taken charge of by the subordinates or employees of the Commissioners of Emigration, by whom it was transported to the Emigrant depot, in the city of New York, as required by the statute regulating the landing of emigrant passengers in the port of New York.

Held, that in the absence of proof of a contract on the part of the defendants to transport the plaintiff and his baggage to the city of New York, the defendants were discharged from any further obligation as to the baggage on its delivery to the Commissioners of Emigration at Hoboken.

It seems, in such a case, that the subordinates or employees of the Commissioners, who took charge of or were entrusted with the safe-keeping of the baggage, are the persons who are liable to the plaintiff.

APPEAL by the defendants from a judgment of the Marine Court.

The complaint alleged that the defendants undertook and agreed, as common carriers, to convey the plaintiff and his baggage from the city of Hamburg to the city of New York; that upon the arrival of the defendant's vessel at Hoboken, the plaintiff, with the other passengers, was ordered by the defendants' agents to go aboard the barge *Ontario*, provided by the defendants for the purpose of carrying passengers and baggage to the city of New York; and "that the defendants, their agents, and servants, in carrying this plaintiff and his baggage upon said barge to the city of New York, acted so carelessly and negligently that said trunk became and was lost and did

not arrive at said city of New York, and became wholly lost to the plaintiff."

The answer was a general denial, but on the trial, the defendants' counsel made certain admissions, as follows: "The plaintiff came to this country in the steamer *Borussia.* On her arrival at her wharf, at Hoboken (which was her final destination) the plaintiff was landed upon the dock, together with his trunk, which the plaintiff then opened for the custom-house officer. After such examination, and after the trunk was passed by the New York custom-house officials, it was then, by the hands on board the Commissioners of Emigration's barge *Ontario,* and in the plaintiff's presence, placed upon the deck of that vessel, together with the plaintiff, and the barge proceeded to the wharf to Castle Garden. During the passage across, the plaintiff frequently saw and had his eye upon the lost trunk. The barge was fastened to the wharf at Castle Garden, and the plaintiff went on shore there, and while on the dock he saw his trunk on board of the barge. Previous to his leaving the dock at Hoboken, some man belonging to the barge, or connected with the Commissioners of Emigration, handed him a brass check with a certain letter "E" on it, and a corresponding check was fastened upon the trunk, and the trunk contained personal property to the amount of $268. The plaintiff still holds the duplicate brass check; and he has not received his baggage."

It was also shown that under the statutes of this State, (Laws of 1848, chap. 218; Laws of 1857, ch. 579,) the defendants are compelled to deliver their steerage passengers to the Commissioners of Emigration.

Upon the conclusion of the testimony, the defendants moved to dismiss the complaint upon the following grounds:

1. That the loss of the trunk was not caused by the acts of the defendants or their agents, but by the Commissioners of Emigration or their agents, or the agents of the barge *Ontario.*

2. That the defendants duly delivered the said trunk to the plaintiff at the dock in Hoboken, and that the plaintiff then and there received the same, and took the same from and out

of the care and custody of the defendants, into his own custody.

3. That the action is not for a breach of contract to deliver in the city of New York, but for damage for the loss of the trunk, after such delivery, as the testimony discloses, had been made.

4. That the plaintiff, after delivery of the trunk to him, accepted a brass check from another carrier, to wit: the agent of the Commissioners of Emigration, on their license.

5. That the defendants neither employed the *Ontario* nor paid it or its agents, nor licensed it, nor had anything whatever to do with it, and that the baggage, after delivery to the plaintiff, was taken from the plaintiff by the agents of the *Ontario* without the action or consent, direct or indirect, of the defendants or their agents.

The motion was denied, and the Justice gave judgment for the plaintiff. The defendants appealed to this court.

*Barretts & Redfield* and *Geo. C. Barrett*, for appellants.

I. This case is plainly distinguishable from *Torpey* v. *Williams*, (*ante*, page 162.) The trunk here *was seen* by the plaintiff on board of the barge belonging to the Commissioners of Emigration, and the barge was not in the employment of the shipowners or paid for by them, as in that case. The element here which did not exist in *Torpey* v. *Williams*, is a distinct delivery to the plaintiff at Hoboken dock. Whether that was according to contract or not, he accepted his trunk there, and there took it into his possession.

II. No more complete delivery could be made. By accepting the Commissioner's check, he released the carrier from further obligation, and accepted instead the fresh obligation of other parties. The defendants might have delivered the trunk to the plaintiff on the high seas if he would have accepted it there, and if he *then* placed it on board of another vessel, met, say, in mid-ocean, and himself got on board of such other vessel voluntarily with his trunk, and accepted the obligation of such other vessel, the contract between himself and the

original carrier would surely have been terminated. It is perfectly clear, therefore, that even assuming that a contract to deliver in New York had been proved, the delivery and acceptance in Hoboken, and the fresh contract then made apart from the defendants, put an end to further obligations or liability on the part of the defendants.

*H. Fox*, for respondent.

I. The loss of the trunk and baggage was caused by the acts of the defendants or their agents, and not by the Commissioners of Emigration. The Commissioners of Emigration have no power to take charge of, or of conveying such baggage. (*Murphy* v. *Commissioners of Emigration*, 28 N. Y. 134.)

II. No delivery to the plaintiff was proven. Unless the plaintiff agreed to receive the baggage at Hoboken dock, such delivery amounts to nothing. (*Torpey* v. *Williams, ante,* page 162.)

By the Court.[*]—Daly, Chief Justice.—The complaint averred that the defendants contracted to carry the plaintiff and his baggage from the city of Hamburg to the city of New York, and if the plaintiff had proved the contract as laid, the judgment might be sustained upon the ground that the non-performance of the condition would not be excused because the baggage after the arrival of the vessel, was, by a public regulation, taken into the possession of the Commissioners of Emigration, or their officers or agents, and was lost whilst in their custody. (*Torpey* v. *Williams, ante,* p. 175; *Merwin* v. *Butler,* 17 Conn. 138 ; Story on Contracts, §§ 463–975 ; Angell on Carriers, § 268–95.)

A common carrier has the right, in my judgment, to limit his obligation in view of the existence of a public regulation at the place of delivery, by which the baggage of the passenger, when landed from the vessel, is taken into the possession of the public authorities, who assume the exclusive right thereafter of delivering it to the passenger, and which divests the

[*] Present—Daly, Ch. J., Robinson and Larremore, JJ.

carrier of all further custody and control of it; but, to entitle him to the benefit of this qualification, it must either be expressed in or implied by the nature of the contract. (*Muschamp* v. *Lancaster & Preston R'y Co.*, 8 Mees. & Welsb. 421; *St. John* v. *Van Santvoord*, 25 Wend. 660; 6 Hill, 157.) The general rule is succinctly stated in an early case, in these words: "Where the law creates a duty or charge, and the party is disabled to perform it without any default in him and hath no remedy over, then the law will excuse him; but when the party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, if he may, notwithstanding any accident or inevitable necessity, because he might have provided against it by his contract." (*Pardine* v. *Jane*, Alleyn, 27.) In that case it was held that the tenant was not discharged from the rent he had stipulated to pay, though a foreign enemy, who had invaded the kingdom, entered upon the demised premises, expelled the tenant and kept him out of the possession and beneficial enjoyment of them.

The defendants, by their answer, denied all the averments in the plaintiff's complaint, except what they expressly admitted and all that was admitted by the answer, or proved upon the trial was, that the plaintiff came to this country as a passenger in the defendants' steamer, with his baggage, consisting of his trunk; which was sufficient upon the complaint to charge the defendants, if the plaintiff's baggage was lost by the breach of that obligation and duty which the law imposes upon common carriers for the safe-keeping and due delivery of the baggage to the passenger, their liability in respect to that being the same as common carriers of goods. (Angell on Carriers, §§ 113, 114.) While that obligation and duty continues, the carrier is excused only for loss or damage arising by the act of God or of public enemies, and the point presented in this case is, whether that obligation continued up to the time when the plaintiff applied for his trunk and it could not be found.

The steamer of the defendants arrived at her wharf at Hoboken, in New Jersey, opposite New York, on the other side of the Hudson river, which, it appears by the evidence, was her final destination.

Klein v. The Hamburg American Packet Company.

There the plaintiff was landed and his baggage was put upon the dock for examination by the custom officers. The plaintiff opened his trunk for the officers to examine its contents, and his baggage having been inspected and passed by the officials, he locked the trunk and it was put on board of a barge of the Commissioners of Emigration by the hands of the steamer. Before the plaintiff left the dock, a man belonging to the barge, or to the Commissioners of Emigration, handed the plaintiff a brass check for the trunk, and a corresponding check was fastened upon the trunk. The plaintiff then went on board the barge, and upon the passage across the river to Castle Garden, frequently had his eye upon the trunk. When the barge was fastened to the wharf at Castle Garden, he went ashore, and from the wharf, saw his trunk on board of the barge. It was then nearly dark, and he was told that he must go into Castle Garden; that he could not get his baggage then.

In the morning he returned to Castle Garden and looked for his trunk, but could not find it.

It was proved, on the part of the defendants, that they are compelled, by the laws of the State, to deliver their passengers to the Commissioners of Emigration ; that the dock at which their steamers arrive is. at Hoboken ; that when the steamer arrives the passengers are landed there ; that the baggage is put upon the wharf, in the presence of the passengers, to be examined by the custom-house officers, after which it is taken charge of by the employees of the Commissioners of Emigration ; that the passenger receives a brass check for his trunk, and that the trunk is then put on board the barge provided by the Commissioners, and that from the time the baggage is landed at Hoboken, the defendants have no control over it. They have men upon the dock who assist the passengers in getting their baggage on board of the barge, and, as a general thing, it is delivered by these men at the string-piece of the pier, and from there, shoved on board the barge by the employees of the Commissioners of Emigration ; though occasionally there is one of the defendants' men on the barge to assist. The checks for baggage are given by a man connected with the

barge, the checks being furnished by the Commissioners of Emigration, and the defendants have nothing to do with them.

Upon this state of facts, I think the conclusion must be that the defendants' obligation and duty as common carriers ceased, in respect to the plaintiff's baggage, when the trunk was delivered into the possession of the employees of the Commissioners of Emigration. The transit, as respects the defendants, was then at an end, and the plaintiff's baggage, by a public regulation, had passed into the custody of persons who were not the defendants' agents or servants, and over whom they had no control. (*Hood* v. *New York and New Haven R. R. Co.*, 22 Conn. 1; *Garside* v. *Trent Nav. Co.*, 4 T. R. 581; *Tower* v. *Utica and Schenectady R. R. Co.*, 7 Hill, 47; Angell on Carriers, §§ 113, 140, 322, 75.) In the absence of proof of a contract on the part of the defendants to convey the plaintiff and his baggage to the city of New York, it must be assumed that they undertook to transport him and his baggage according to their established laws, usage and custom, to the port of New York, and what that was is shown by the evidence. It was to convey him to the dock at Hoboken, the place at which the vessel arrives, and which is the termination of her voyage, or, as the evidence expresses it, her final destination, where emigrant passengers and their baggage, destined for the city of New York, are taken charge of by the subordinates or employees of the Commissioners of Emigration and transported to the emigrant depot at Castle Garden. If I am right in assuming, in the absence of the proof of any other contract, that this was the extent of their obligation, then it was fully discharged, and their duty was at an end when the plaintiff and his trunk was put on board the barge. The plaintiff came from Hamburg, in the steerage of the steamer, and was what is known as an emigrant passenger.

By the laws of the State of New York all personal baggage of emigrant passengers arriving at the port of and destined for the city of New York, must be landed at the place in this city designated by the Commissioners of Emigration, and the master or owner of any vessel, landing any emigrant passenger, or his baggage, at any other place in this city, is subject to a pen-

alty (2 Laws of 1857, p. 243); nor can any steamboat, tug, barge, propeller, or other vessel, take such passenger, or his baggage from any ship or vessel, to any dock in this city or Brooklyn, unless by the special license or authority of the Commissioners. (*Id.* p. 240.) The Commissioners have designated Castle Garden, in this city, as the place for the landing of such passengers and their baggage, and the defendants could not lawfully land the plaintiff at any other place, nor allow any other vessel to come and take the emigrant passenger from their steamer, except one designated, or licensed by the Commissioners. As the defendants' dock and wharf for their steamer was at Hoboken, and as the Commissioners had a barge there ready to take the passengers and their baggage to the depot at Castle Garden, there was nothing for the defendants to do but to land the plaintiff and other emigrants and their baggage, upon the dock at Hoboken, when the steamer arrived; and having done this, and by their servants, put the plaintiff's trunk on board the barge, they did all they could be required to do in the fulfillment and discharge of their contract.

We held, in *Murphy* v. *The Commissioners of Emigration*, that an action would not lie against the Commissioners for the non-delivery of the baggage of an emigrant passenger taken from the vessel by a tug-boat licensed by the Commissioners, for the reason that they are public officers, and as such, are not personally responsible for loss occasioned by the neglect or acts of their subordinates or those acting under them, or by their authority, and this is now the settled law of this State, the decision having been affirmed by the Court of Appeals (28 N. Y. R. 134). "The government," said Selden, J., "in assuming control over the landing of emigrants and their baggage, does not undertake, either by itself or its officers, to indemnify the emigrant." If the regulation which it has established fail to protect the emigrant, though designed for that purpose, "it is a misfortune for which he has no remedy against the State or against the Commissioners."

The question may be asked, who, then, is responsible for the loss of the plaintiff's trunk? The answer must be, the subordinates of the Commissioners of Emigration who took it

in charge, or who was intrusted with the safe keeping of it. (*Rowning* v. *Goodchild*, 3 Wils. 453, 454, 2 Ed; *Whitfield* v. *DeDespencer*, Cowp. 765; *Bayley* v. *The Mayor &c.*, 3 Hill, 531; *Stock* v. *Harris*, 5 Burr. 279; Story on Bailments, § 463; Story on Agency, § 319, 6, 7th Ed.)

If lost by their negligence they are answerable, or if they fail to deliver it, or cannot produce it when the emigrant applies for it, or explain its loss through circumstances that will excuse them, its loss through their negligence may be presumed until the contrary is shown. (*Arent* v. *Squire*, 1 Daly, 347; *Murphy* v. *Com'rs of Emigration*, 28 N. Y. R. 134; *Semler* v. *The Same*, 1 Hilt., 244; Shearman & Redfield on Negligence, 12.)

It would seem from the evidence, that the Commissioners assumed a more direct and exclusive control and custody of the emigrant and his baggage, than was the case in *Murphy* v. *The Com'rs, &c. (supra)*, or in *Semler* v. *The Same* (1 Hilt., 244.)

Whether they have or have not, by so doing, brought themselves within the pale of individual responsibility, it is impossible for us to say upon the facts now before us. All that we can say is, that if the Commissioners go beyond the limits of their official power, or act in the discharge of them in so inexcusable a manner as to become directly, themselves, the cause of loss or injury to the emigrant, they would be responsible. (*Dunlop* v. *Munroe*, 7 Cranch, 242, 269; 2 Kent's Com. 610, 4th Ed.; Story on Agency, § 319, 7th Ed.)

Whoever may be answerable for the loss of the plaintiff's trunk, it is very clear to my mind that the defendants are not.

The judgment should be reversed.

Judgment reversed.