JAMES L. LAMB and others, Respondents, *v.* THE CAMDEN AND AMBOY RAILROAD AND TRANSPORTATION COMPANY.

Plaintiffs shipped at Cairo, Ill., by the Illinois Central Railroad a quantity of cotton, consigned to S. W. & Co., New York. In the bill of lading given by the I. C. R. R. Co. its agent was named as consignee at Chicago. The bill of lading exempted that company from "damage or loss by fire," and also, from all responsibility for the safety or safe carriage of the packages beyond the line of its road, but stipulated that the through rate should be two dollars per 100 pounds. The I. C. R. R. Co. contracted for the transportation from Chicago to New York with the U. T. Co. The bill of lading containing a similar exemption from loss or damage by fire, and, also a stipulation, that in case of loss the latter company should be liable only for the value of the property at the time of shipment. The cotton was received by defendants at Philadelphia; transported to New York, and while in their custody upon their pier was destroyed by fire.—*Held,*

1st. That the contract with the I. C. R. R. Co. was not a through contract; but under it, that company had power to contract for the transportation beyond the line of its road, and to provide in such contract, for a like exemption of the subsequent carrier, as that contained in its own

contract with plaintiffs. It had no power, however, to bind the latter by any stipulation not embraced in that contract.

2d. That the exemption from damage or loss by fire, did not exonerate defendant from a loss so happening, in case the fire resulted from its own negligence.

3d. That plaintiffs, to maintain their action must show affirmatively, such negligence..

A ruling therefore of the court upon the trial, that the burden of proof was on the defendant, to show the fire was not caused by any negligence on its part, and a similar charge to the jury was erroneous. (PECKHAM and ALLEN, JJ. dissenting.)

(Argued June 8th, 1871; decided November 10th, 1871.)

APPEAL from judgment of the General Term of the New York Common Pleas, affirming a judgment entered upon a verdict in favor of plaintiff, and also, affirming order denying motion for new trial. (Reported below, 2 Daley, 454.)

The action is brought against defendant as a common carrier, to recover damages for the non-delivery of a quantity of cotton.

The defendants are common carriers by railroad and steamboat between Philadelphia and New York.

Seven hundred and ninety bales of cotton were shipped by the plaintiffs, June 25, 1864, at Cairo, Illinois, on the Illinois Central railroad. The Illinois Central issued its receipts or bills of lading for this cotton. These acknowledge the receipt of the cotton, "consigned to James Warrack, agent, Chicago," marked, "Sawyer, Wallace & Co., New York," and provide that "it is especially understood, that for all loss and damage occurring in the transit of said packages, the legal remedy shall be against the particular carrier or forwarder only in whose custody such packages may actually be at the time of the happening thereof; it being understood that the said Illinois Central Railroad Company assumes no other responsibility for their safety, or safe carriage, than may be incurred on its own road;" and that the through rate shall be two dollars per 100 pounds, and providing that "the company are not responsible for damage or loss by fire."

This cotton was carried by the Illinois Central to Chicago,

and there delivered by that company to the Union Transport-
ation and Insurance Company, to be further transported. The
latter company issued its receipts or bills of lading therefor,
which were delivered to James Warrack, who was the agent
of the Illinois Central at Chicago, and by him forwarded to
the Illinois Central at Cairo. These contained exemptions
and reservations in substance the same as the Cairo bills, and
in addition this clause: "When losses occur for which the
carriers may be responsible under the bill of lading, the cost
or value of the property at the date of shipment shall govern
the settlement of the same."

This cotton, excepting one bale, not accounted for, was
delivered by the Union Transportation to the defendants, at
Philadelphia.

Of these 789 bales received by the defendants, all were
delivered by them at New York, except 137 bales. These
137 bales were destroyed by fire, while in defendants' custody,
at their pier, in the city of New York, which fire destroyed
defendants' boats, pier, and all the goods therein contained.

This fire occurred on the night of Sunday, July 10, 1864.
It originated on the defendants' steamboat John Potter, one
of three steamboats owned by defendants, and that night all
moored to the pier.

After proving that the loss had occurred by fire, the defend-
ants proposed to rest their case; but the court having expressly
ruled, in effect, that they would not be exonerated under the
provisions of the bills of lading by proof, that the loss was
occasioned by fire, unless they also showed that such destruc-
tion by fire was not occasioned by negligence on their part,
(to which ruling exception was duly taken) further evidence
was offered by defendants, tending to show that due precaution
was taken and care exercised to prevent the occurrence and to
stay the progress of fire.

At the close of the testimony, the defendants requested the
court to charge, "that the defendants are not liable in this
action, unless the destruction of the cotton is proved to have
been caused by the defendants' negligence or default." This

the court refused, but charged, among other things, that the defendants "were not relieved from the burden of satisfying the jury that the loss, which it is beyond doubt, happened by fire, was not occasioned by negligence on their part."

The court also charged, that while the defendants were entitled to the benefit of the several restrictive clauses contained in the Chicago bills of lading, limiting their liability as common carriers, the particular provision of such bills of lading, whereby the measure of damages in case of loss, was limited to the cost or value of the property at the time of shipment, would not avail them, for the reason that such provision was only applicable in cases of voluntary settlement, and not in case of litigation.

The jury rendered a verdict for plaintiffs for $81,618.07. Judgment was entered October 22, 1866.

*C. F. Sanford*, for appellant.    Defendants were entitled to the exemptions in the Cairo bill of lading. (*Stoddard* v. *Long Island Railroad Co.*, 5 Sand., p. 180; *Moriarty* v. *Harnden's Express*, 1 Daly, 227; *Maghee* v. *Camden and Amboy Railroad Company*, General Term, Supreme Court; *Manhattan Oil Company* v. *Camden and Amboy Railroad Company*, 5 Abb. Pr. R. N. S., 289, and note; 52 Barb., 72; *McMillan* v. *Mich. S. R. R.*, 16 Mich., 79, 123; *Heffron* v. *The Same*, id., p. 131.)    The burden of proof was upon plaintiff to show, affirmatively, the loss was the result of defendants' negligence. (*Memphis and C. R. R. Co.* v. *Reeves*, 10 Wall., 176; *W. T. Co.* v. *Donner*, U. S. Sup. Court, N. Y. Trans., May 27, 1871; Story on Bailments, § 557; Angell on Carriers, § 247; *Nicholson* v. *Wilson*, 5 East R., 507; *Moving* v. *Todd*, 1 Stark, 72; *Harrison* v. *Packwood*, 3 Taunt., 371; *Phelps* v. *Williamson*, 5 Sandford, 578; *Mercantile Mut. Ins. Co.* v. *Chase*, 1 E. D. Smith, 115; *Parsons* v. *Monteath*, 13 Barb., 353; *Moore* v. *Evans*, 14 Barb., 526; *Meyer* v. *Harnden's Ex. Co.*, 24 How. Pr. R., 290; *Dorr* v. *New Jersey Steam N. Co.*, 4 Sandf., 136; 1 Kern., 485; *Stoddard* v. *The Long Island R. R. Co.*, 5

Sandf., 180; *Mercantile Mut. Ins. Co.* v. *Calebs*, 20 N. Y., 173; *Moriarty* v. *Harnden's Express*, 1 Daly, 227; *Camden and Amboy R. R. Co* v. *Baldauf*, 16 Penn. R., 67; *Bingham* v. *Rogers*, 6 W. & S., 495; *Beckman* v. *Thouse*, 5 Rowle, 179; *Farmers' and Merchants' Bank* v. *Champlain Trans. Co.*, 23 Verm., 186; *Marsh* v. *Horn*, 3 Barn. & Cress, 322; *Beekman* v. *Thouse*, 5 Rawle., 179; *Clark* v. *Spence*, 10 Watts, 335; *Runyon* v. *Caldwell*, 7 Humph, 134; *Newton* v. *Pope*, 1 Cow., 169; *Schmidt* v. *Blood*, 9 Wend., 268; *Foot* v. *Stork*, 2 Barb., 326, *Worington* v. *Snyder*, 3 Barb., 380; *Brush* v. *Miller*, 13 Barb., 489; *Clay* v. *Williams*, 1 H. Bl. R., 298; *Levie* v. *Waterhouse*, 1 Price, 280; *Gilbert* v. *Dole*, 5 Ad. & Ellis, 540; *Neustadt* v. *Adams*, 5 Duer, 43; *Logan* v. *Matthews*, 6 Barr, 417; *Skinner* v. *London, Brighton, and South Coast Railway Co.*, 2 E. L. & E., 360; *Bush* v. *Miller*, 13 Barb., 481; *Fenn* v. *Timpson*, 4 E. D. Smith, 453; *Neustadt* v. *Adams*, 5 Duer, 43; *Arent* v. *Squire & Johnston*, 1 Daly, 347; *Clark* v. *Barnwell*, 12 How., U. S., 272; *French* v. *B. and N. Y. R. R. Co.*, 4 Keyes, 108.)

*W. F. Shepard & L. Marsh*, for respondent. The contracts with the Illinois Central Railroad Company are limited to that company, and do not inure to the benefit of subsequent carriers. (*Van Santford* v. *St. John*, 6 Hill, 157; *Baldwin* v. *U. S. Telegraph Co.*, 1 Lansing, 125, 129; *Farmers' and Mechanics' Bank* v. *Champlain Transportation Company*, 18 Vermont, 131; *Farmers' and Mechanics' Bank* v. *Champlain Trasportation Company*, 23 Vermont, 186, 209; *Hood* v. *N. Y. and New Haven R. R. Co.*, 22 Conn., 1; *Elmore* v. *Naugatuck R. R. Co.*, 23 Con., 457; *Naugatuck R. R. Co.* v. *Waterbury Button Co.*, 24 Conn., 468; *Converse* v. *Norwich and N. Y. Trans. Co.*, 33 Conn., 166; S. C., 6 Am. Law Reg. N. S., 214; *Nutting* v. *Conn. R. R.*, 1 Gray, 502; *Burroughs* v. *N. and W. R. R.*, 100 Mass., 26; *Pendegast* v. *Adams' Ex. Co.*, 101 Mass., 120: *Perkins* v. *Portland*, 47 Maine, 573; *McMillan* v. *Mich. etc., R. R.*,

16 Mich., 119; *Jernuson* v. *C. and A. R. R. Co.*, 4 Am. Law, Reg., 234; *Rome R. R. Co.* v. *Sullivan*, 25 Ga., 228; *Collins* v. *B. and E. R.*, 36 Eng. L. & E., 482; *Schneider* v. *Evans*, 9 Am. Law Reg., 536; *C. and A. R. R. Co.* v. *Forsyth*, 11 Penn., 81.) The Chicago bills of lading are not binding on plaintiffs. (*Ladue* v. *Griffith*, 25 N. Y., 364; *Baldwin* v. *U. S. Telegraph Co.*, 1 Lansing, 125, 130.) Under a through contract the subsequent carriers liable to the owner. (*N. J. Steam Nav. Co.* v. *Merchants' Bank*, 6 How. U. S., 344; *Stoddard* v. *L. I. R. Co.*, 5 Sand., 188; *Wing* v. *N. Y. and E. R. R. Co.*, 1 Hill, 235.) It was incumbent on defendant to show, the loss occurred without negligence on their part. (*Alexander* v. *Greene*, 7 Hill, 533; *Wells* v. *Tucker*, 4 Seld., 375, 380; *New Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 How. U. S. R., 344; *Hooper* v. *Wells*, 5 Am. Law Reg., 16; *Smith* v. *N. Y. C. R. R.*, 29 Barb., 132; *Michaels* v. *N. Y. C. R. R.*, 30 N. Y., 564; *Reed* v. *Spaulding*, 30 N. Y., 630; *Wing* v. *N. Y. and E. R. R.*, 1 Hill, 235; *Steinway* v. *Erie R. R. Co.*, Ct. Appeals, N. Y. Trans., April 17, 1871; *Simmons* v. *Law*, 3 Keyes, 217, 221; *French* v. *B. and E. R. R. Co.*, 4 Keyes, 106; *Turney* v. *Wilson*, 7 Yerger, 340; *Whitside* v. *Russell* 8 W. & T., 44; *Roberts* v. *Riley*, 15 La., 103; *Fairchild* v. *Slocum*, 7 Hill, 292, 297; *Parsons* v. *Monteath*, 13 Barb., 353; *Neaver* v. *Birchard*, 40 Vermt., 326; 1 Parsons on Con., 606; Story on Bailment, § 410; *Schmidt* v. *Blood*, 9 Wend., 286; *Beardsley* v. *Richardson*, 11 Wend., 25; *Bush* v. *Miller*, 13 Barb., 481; *Platt* v. *Hibbard*, 7 Cow., 497; *Logan* v. *Matthews*, 6 Barr., 417; *Swindler* v. *Hilliard*, 2 Rich., 286; *Arent* v. *Squire*, 1 Daly, 347.) Defendants' proof of losses by fire raises presumption of negligence, and charge was unobjectionable. (*Holbrook* v. *U. C. R. R.*, 12 N. Y., 236, 242; *Curtis* v. *Roch. etc. R. R. Co.*, 18 N. Y., 534, 540.) If error in referees' ruling, it was caused by defendants' proceeding with their proof. (*Colgrove* v. *N. Y. and H. R. R. Co.*, 6 Duer., 382; S. C., 20 N. Y., 412; *French* v. *B. N. Y. and E. R. R.*, 4 Keyes, 108, 116.) Under bills of lading

defendants were liable for want of ordinary care. (*Alexander* v. *Greene*, 7 Hill, 533 ; *Wells* v. *Steam Nav. Co.*, 4 Seld., 375 ; *Smith* v. *N. Y. C. R. R.*, 29 Barb., 132 ; *N. J. Steam Nav. Co.* v. *Merchants' Bank*, 6 How., N. S., 344; *Hooper* v. *Wells*, 5 Am. Law Reg. U. S., 16.) Failure to receive cotton in reasonable time, does not affect the liability of defendants. (*Clendaning* v. *Tuckerman*, 17 Barb., 184 ; *Gould* v. *Chapin*, 20 N. Y., 259.) What was reasonable time is a question solely for jury. (Edwards on Bailment, 521, 522 ; *Hill* v. *Humphrey*, 5 Watts & Serg., 123 ; *McDonald* v. *W. R. R. Co.*, 37 N. Y., 497, 507 ; *Price* v. *Powell*, 3 Com., 122 ; *Clendaning* v. *Tuckerman*, 17 Barb., 184 ; *Barcley* v. *Clyde*, 2 E. D. Smith, 95.)

Grover, J. Concurring in the following conclusions arrived at in the opinion of Peckham, J., I shall not add anything to his discussion of them. These conclusions are: First. That the defendant was relieved from liability as carrier for the loss of the cotton by fire, under the contract made by the shippers for its transportation, with the Illinois Central Railroad Company at Cairo. Second. That it is to be assumed, from the evidence, that Warrack, named in the bill of lading as consignee at Chicago, was the agent of the Illinois Central Company, and not the agent of the plaintiffs; that as such agent of the company, he had power to enter into a contract with the Union Transportation Company, for the transportation of the cotton from Chicago to New York, and to provide in such contract, for the exemption of all the subsequent carriers from liability for loss happening by fire, for the reason that the Illinois Central had the power to contract for the transportation of the cotton upon such terms, by virtue of its contract with the shippers at Cairo, but had no power to bind the plaintiffs by any stipulation not embraced in that contract; and that consequently, the plaintiffs were not bound by the stipulation in the contract made by him with the Union Company, that in case of loss, the latter should be liable only for the value of the property at the time of shipment. Third.

That the exemption of liability from loss happening from fire, did not exonerate the company from liability for loss so happening, in case the fire causing it, resulted from the negligence of the defendant or its employes; that none of the exceptions of the defendant to that portion of the charge, relating to the reasonableness of the time for the removal of the cotton, after it was landed by the defendant in New York were well taken. It was proved by the defendant, that the cotton in question was destroyed by fire, while in a shed upon the dock of the defendant, where it had been placed by the defendant. The question was made upon the trial, whether this proof, of itself, constituted a defence to the action, or whether the defendant was bound to go further, and show that it and its employes were free from all negligence in the origin and progress of the fire, or whether it was incumbent upon the plaintiffs, to maintain the action, to prove that the fire causing the loss resulted from such negligence, in other words, whether the plaintiff was bound to prove that the fire causing the loss, resulted from the negligence of the defendant, or the latter was, in the first instance, bound to prove itself free from all negligence in that respect. In considering this question, it must be borne in mind, that it has already been determined, that the defendant was exonerated from all liability as carrier, for a loss caused by the destruction of the cotton by fire, by an express provision of the contract in pursuance of which it transported the cotton. Relieved of this responsibility, it was liable only, in case it was so destroyed, as bailee for hire; and it is undisputed, that such a bailee is liable for the loss of the property only in cases where the loss is the result of his negligence. The question is, whether in case of loss by a bailee for hire, the bailor can recover upon simple proof of loss, unless the bailee shall prove that he was free from all negligence contributing to such loss, or whether the bailor must go further, and prove that the loss was caused by the negligence of the bailee. I believe this to be a fair statement of the question between the parties to the present action; and yet so stated, no one will hardly insist, that the bailor can recover without affirmatively

proving, that the loss was caused by the negligence of the bailee. The decisions are numerous to this effect, based upon the familiar principle that negligence, being a wrong, will not be presumed, but must be proved by the party charging it and seeking a recovery founded thereon. I shall cite a few only. (*R. R. Co.* v. *Reeves*, 10 Wall., 176; *N. J. Steam Nav. Co.* v. *The Merchants' Bank*, 6 How. U. S., 344; *Newton* v. *Pope*, 1 Cow., 109; *Schmidt* v. *Blood*, 9 Wend., 268; *French* v. *The Buff.*, etc., *R. R.*, decided by the Court of Appeals, 4 Keyes, 108.) Some of these were cases of loss by carriers, proved to have been from causes for which they were not liable as carriers; others where the loss was by other bailees. To these might be added other cases in the Supreme Court of the United States, in the courts of this and other States, and in England; but it is unnecessary. Cases may occur, where the proof of the loss and circumstances connected therewith, may show a case of presumptive negligence in the defendant, such as will entitle the plaintiff to recover upon that ground, in the absence of further proof. To illustrate: A passenger upon a railroad, receiving an injury caused by the cars running off the track, may rely upon the fact that they did run off as evidence of negligence; nevertheless, the *onus* is upon him of establishing to the satisfaction of the jury, that his injury was caused by the negligence of the defendant; and, unless he satisfies the jury, affirmatively, of this fact from all the evidence, he is not entitled to recover. (*Curtis* v. *The Rochester etc. Railroad*, 18 N. Y., 534.) It sometimes occurs, in the progress of a trial, that a party holding the affirmative of the issue, and consequently bound to prove it, introduces evidence, which uncontradicted, proves the fact alleged by him. It has, in such cases, frequently been said, that the burden of proof was changed to the other side; but it was never intended thereby that the party bound to prove the fact was relieved from this; and that the other party, to entitle him to a verdict, was required to satisfy the jury that the fact was not as alleged by his adversary. In such cases, the party holding the affirmative is still bound to satisfy the jury,

affirmatively, of the truth of the fact alleged by him, or he is
not entitled to a verdict.    In the present case, to entitle the
plaintiff to recover, he was bound to prove that the fire which
consumed the cotton resulted from the negligence of the
defendant.    The remaining inquiry is, whether the rule
requiring this was violated upon the trial, from which the
defendant might have been prejudiced, after proof had been
given by the defendant showing the destruction of the cotton
by fire.    Its counsel proposed to rest his case, reserving the
right to rebut any testimony that might be adduced by the
plaintiffs, tending to show that the destruction of the cotton
by fire was occasioned through the defendants' negligence or
default.    The plaintiffs' counsel insisted, that the defendant
was bound to prove that it had not been guilty of negligence,.
and that the defendants' case must then be exhausted.    The
court thereupon decided, that the burden of proof was on
the defendant, to show that the destruction of the cotton by
fire was not caused by negligence on its part.    This was error.
Although in proving the destruction of the cotton by fire, it
appeared that the fire originated on a boat of the defendant
laying at its dock.    This was only evidence tending to show
negligence of the defendant.    Whether sufficient *prima facie*
to entitle the plaintiff to a verdict, is a question not necessary
to decide, as no ruling thereon was made by the court.    Be
that as it may, the burden was still upon the plaintiffs to
establish, to the satisfaction of the jury from all the evidence,
that the fire was the result of the negligence of the defendant.
Other evidence was given making the question of the
defendants' negligence, in respect to the fire, proper to be
decided by the jury.    The court, among other things, charged
the jury, that, although the defendant had been freed from
their ordinary measure of responsibility as insurers, they are
not relieved from the burden of satisfying you that this loss,
which it is beyond doubt happened by fire, was not occasioned
by negligence on its part.    To this the defendants' counsel
excepted.    In another part of the charge the judge stated,
that the real importance of the question as to reasonable time

(for the removal of the cotton by plaintiffs' meaning), con-
sists in this case of the fact, that down to this point of time,
the burden of establishing that there was not any such negli-
gence as I have stated rests upon the defendant. This part
of the charge was excepted to. Both exceptions were well
taken. The idea plainly conveyed to the jury was, that they
should find for the plaintiff, unless satisfied from the evidence,
that the fire was not the result of the defendants' negligence,
thus leaving them to find for the plaintiff, if unable to determine
whether the fire so resulted or not, while the instruction should
have been, to find for the defendant, unless they found, from all
the evidence, that the fire was the result of the negligence of the
defendant. The jury, after retiring to deliberate on their
verdict, returned into court and made the following inquiry:
Whether, if satisfied that proper precaution was not taken to
prevent fire on board (the boat meaning), through the neglect
to place a watchman there, they were to find for the plaintiff
for the whole amount. To which the court responded, that
the omission to place a watchman actually on the boat, spe-
cially charged with the duty of guarding her, might be consi-
dered by the jury on the question of negligence in the case;
and if the jury found the defendants guilty of negligence,
which contributed to the loss of all or any part of the cotton,
etc., to find for the plaintiff for such cotton. This did not
cure the error committed in the charge previously given and
excepted to. In that, the judge had instructed the jury to
find for the plaintiffs, unless the defendant had satisfied them,
that the fire was not the result of its negligence. This was
not withdrawn by the answer given to the question of the
jury. Taking both together, the jury must have understood,
that they were to find for the plaintiffs, if satisfied that the
fire resulted from the defendant's negligence, and that they
were also to find for them, unless they found it did not so
result. This gave the plaintiffs the verdict, if the jury were
unable to find negligence in the defendant, on the ground that
they were unable to say that the proof showed that it was not
negligent. Thus in effect, finding for the plaintiffs, without

determining the question at all, much less without finding that the fire was the result of defendant's negligence. For the error of the charge upon this point, and in the ruling upon the trial, that the burden was upon the defendant, to show that the fire did not result from its negligence, the judgment must be reversed and a new trial ordered; costs to abide event.

PECKHAM, J. (dissenting). Was the contract of the Illinois Central Railroad Company, at Cairo, where the cotton was shipped, a through contract to New York, or only a contract to carry to Chicago, the terminus of its road?

It will be observed, that there is no express contract to carry to New York. The cotton is consigned to the Illinois Central's agent at Chicago. But it is also marked, in the bill of lading, and consigned "to Sawyer, Wallace & Co., New York, account J. L. Lamb & Co.," the plaintiffs; "through rate, two dollars per 100 pounds." · After stating certain exemptions to that company from liability for damage, this receipt or bill of lading says: "And it is further especially understood, that, for all loss and damage occurring in the transit of said packages, the legal remedy shall be against the particular carrier or forwarder only, in whose custody the said packages may actually be at the time of the happening thereof, it being understood that the said Illinois Central Railroad Company assumes no other responsibility for their safety or safe carriage than may be incurred on its own road."

The rate marks on the bill of lading impose no obligation, in this State, to carry further than the first carrier's hire. (*Van Santvoord* v. *St. John*, 6 Hill, 157.) Nor does fixing the value of through freight necessarily have the effect of making it a through contract.

In *Camden and Amboy Railroad Company* v. *Forsythe* (61 Penn., 81), it was held, that there was no through contract, although the first road, in its bill of lading, fixed the through rate, payable at the point of destination, but stated it would not be responsible, beyond its line, as common carrier. (*Collins* v. *Bristol and Exeter Railway*, 38 Eng. L. & Eq., 593.)

Its reversal in the house of lords proceeds upon a ground that does not impair its reasoning as to the facts of this case. (7 Ho. Lords Cases, 194 ; and see *Converse* v. *Norwich and N. Y. Tr. Co.*, 33 Conn., 166 ; *McMillan* v. *M. S. and N. I. R. R. Co.*, 16 Mich., 79.) The facts there, as finally developed in the house of lords, warranted the conclusion, in the judgment of that court, that payment for the whole transportation was received by the first road, the Great Western, for its own use, and that that road, in fact, carried the freight the whole way to its ultimate destination, in its own van and under its own guard.

In the case at bar, the Illinois road received pay only for the transportation over its own road, received its proportion of the through rate, and carried the freight only to Chicago, the end of its road.

But it contracted for the amount of freight which the shippers should pay for the entire carriage. It virtually guaranteed that this freight should be carried to New York at two dollars the hundred.

There is certainly then, very controlling reasons for its stipulating as to the risks to which its transportation should be liable.

In this view the words, " not liable for loss by fire," written across the face of the bill, should be interpreted. There is nothing in the language to limit the effect of these words to the Illinois road, and clearly, there is nothing in the reason of the thing.

Again, these words were in writing. There is a statement in the body, in print, exempting the Illinois Central from liability for fire. If they differed, the writing must prevail. Force must be given to both, if possible. This does give life to both. In *Camden and Amboy Railroad* v. *Forsythe* (*supra*), the court held, that exemption as to fire was confined to the first road, under the language there used.

The bill of lading expressly provides, for limiting the remedy for damages to the property, to the particular carrier on whose road the injury may occur.

I see no objection to allowing the contract to have its natural and ordinary meaning and obligation.

The Illinois road virtually says, "I am a common carrier to Chicago. I will carry this cotton to that point, and forward it thereafter, and as you agree that there shall be no liability for fire, I guarantee that the through transportation shall be at the rate of two dollars for 100 pounds."

If not a through contract so as to hold the first road for its safe transportation to the ultimate point, it may yet be a valid agreement as to the rate, and as to this exemption from liability.

There may be an understanding between the connecting road, without any joint interest or copartnership as to the rate and conditions upon which freight will be forwarded from each other, each being liable for its own defaults, and the first carrier may be the agent of the others.

Had the Illinois Central made a through contract to transport this property to New York, I know of no legal principle that would prohibit its contracting with any other road, to transport or forward it upon such terms and qualifications as to common-law liability as it thought fit to make.

If it made no special contract with another road, yet such other road, as to these plaintiffs, might avail itself of the protecting provisions of the first contract, as to through transport. (See *Bristol and Ex. Railway* v. *Collins*, 7 Ho. Lds. Cas., 194, per Lord Ch. CHELMSFORD.)

I think the Illinois Central made no through contract, so as to authorize it to make any special contract different from its own with another carrier. If it did not, what authority would it have to qualify or limit the common-law liability of any subsequent carrier by a special contract with such carrier? I can see none. (See *Bristol and Ex. Railway* v. *Collins*, 7 Ho. Lords, *supra*.) It was not the agent of the owner, to make any special contract with the next carrier, except that it should "not be liable for loss by fire," as that was the contract already made for its through carriage by whomsoever carried.

If the first carrier have general authority as agent of the owner, what prevents its exempting the next one from all liability, even from the fraud of its agents or servants? Where is the limit? Such a contract may be made by the owner. (*Wells* v. *N. Y. C. R. R. Co.*, 24 N. Y., 181; *Bissell* v. *N. Y. C. R. R. Co.*, 25 N. Y., 442.) Where is the limit of the agency of the first carrier, if he be an agent of the owner, to make any special contract upon that subject. His simple duty is to deliver the property to the next carrier to be forwarded.

This reasoning, if correct, renders it unnecessary to look at the terms of the bill of lading of the Union Transportation Company, given to the agent of the Illinois Central at Chicago.

The question as to the *onus* of proving negligence in the defendant in the loss of the cotton by fire, was not practically in this case at the trial.

After the defendant had given proof of the loss of the cotton by fire, and some evidence of the care used against fires, the defendant proposed to rest, reserving the right to rebut any proof of negligence offered by plaintiff.

The plaintiffs insisted that defendant must exhaust its proof on that subject as the *onus* lay on it to prove proper care.

The court so ruled. The plaintiff having proved a *prima facie* case of negligence in defendant's failure to deliver the cotton, clearly defendant was then bound to exhaust its proof on that question. Defendant had no right to prove one fact and rest, and then return to like proof again. (This will be again referred to.) The defendant proceeded and gave it's proof in full. The plaintiff then gave some testimony on the point.

The court then charged the jury, that though the defendant was not an insurer, " yet it was not relieved from the burden of satisfying you, that this loss was not occasioned by negligence on its part; and if it omitted to take that degree of care, which persons of ordinary prudence would usually take under such circumstances, and that caused " the loss, the defendant would be liable.

The judge then in several ways repeated, that if the defendant had not exercised the proper care, and that caused the loss, it was liable. The judge said the jury must decide that, from the evidence, from the facts and circumstances proved and relied upon in the case, concluding on this point, "if you conclude from your review of the proof, that the defendant was guilty of negligence contributing to the injury," then the jury should find for the plaintiff.

It was submitted to the jury, to find upon the evidence given (not upon any presumption for lack of proof), as to the exercise of proper care.

There was no charge, as to what the jury should do in case they were in doubt upon the evidence, or if the testimony was balanced as to negligence, but simply to find upon the facts proved.

The plaintiff gave very little testimony as to negligence, and there was little, if any, material contradictory evidence.

Upon confessedly proved facts the jury found the negligence.

The question as to the *onus probandi*, therefore, is simply hypothetical. The facts were fully proved, no matter by whom, and those facts were properly submitted to the jury to decide.

No legal injustice could thus have been suffered by defendant. In such case no new trial should be granted.

But assume that the question properly arose; then upon whom rests, the *onus* of proving the exercise or the want of ordinary care by the carrier.

The plaintiff proves the delivery of the goods and the failure to deliver by the carrier, or a demand, and refusal, and rests. The defendant must then make out a defence.

It proves that the goods were destroyed by fire while in defendant's custody, and that the company is exempt from loss by fire.

Does that make a *prima facie* defence? I think not.

Here let it be observed is an ordinary fire; it is not a loss by the act of God. A loss by such a fire never is. (*Miller*

*v. Steam Nav. Co.*, 10 N. Y., 431.) And the rule is laid down by Sir Wm. Jones, and by Pothier, .that such a fire occurring on the defendants' own premises is *prima facie* evidence of negligence. (Story on Bail.; § 406, 411.) Such a presumption is founded upon human experience.

In speaking of mere proof of burglary by an innkeeper, Ch. J. Redfield observed, such proof is not sufficient, inasmuch as the majority of such burglaries 'may be supposed fairly to result from negligence on the part of the innkeeper. (*McDaniel* v. *Robinson*, 26 Verm. at 340 ; and see *C. & A. R. R. Co.* v. *Baldauf*, 16 Penn, 67 ; so in *West Trans. Co.* v. *Downer*, 11 Wall., 129.) The court concedes, that if such loss generally does not occur without negligence, then mere proof of the fire makes no defence, without proving the proper care exercised by the defendant.

I think it may be safely said that a majority of fires are caused by negligence, so safely as to base a presumption of law thereon. That being so, it follows that merely showing that a fire occurred upon defendants' own premises, originated there and consumed the cotton intrusted to its charge, and in its custody for hire, makes no defence without adding the proof of the exercise of proper care. When a car runs off the track (*Carpue* v. *Lon. and B. R. R. Co.*, 5 Ad. & Ell., 747) ; when a stage-coach oversets (*Stokes* v. *Saltonstall*, 13 Peters, 181) ; or a wheel of a coach runs off ( *Ware* v. *Gay*, 11 Pick., 106), and a passenger is injured, it was held, that the nature of the accident afforded proof of the defendant's negligence, and he was called upon to give proof of care.

So in this court, it was properly held by Grover, J., that where an injury to a passenger was caused by the cars running off the track, the negligence was, *prima facie*, proved by proof of the running off, and the injury consequent. His remarks are so pertinent that I quote : " The plaintiff has sustained his cause of action, when he has shown a failure to perform the duty from which he has sustained an injury. It is for the defendant, then, to show the facts relieving him from responsibility in the particular case. This imposes no hard-

ship upon the defendant in this class of cases. The whole management is exclusively under his control. He has ample means to show the true cause of the difficulty. The plaintiff knows nothing about it. He takes passage with the carrier, who instead of conveying him safely, inflicts an injury upon him by the failure of some of the machinery employed by him. In many cases it would be impossible for the plaintiff to ascertain the particular defect, and I think, no such obligation is cast upon him by the rules of evidence." (*Curtis* v. *Roch. and Syr. R. R. Co.*, 18 N. Y., 543.)

So, in the Exchequer Chamber, it was held, that where the thing is shown to be under the management of the defendant, and the accident is such as, in the ordinary course of things, does not happen, if those who have the management use proper care, it affords reasonable evidence that the accident arose from want of care. (*Scott* v. *Lond. Dock Co.*, 3 Hurlst. & Colt., 596.)

It is said that the plaintiff has averred negligence, and must prove it.

He has averred a failure to deliver the cotton by reason of negligence and want of care.

This he fully proves by proving the failure to deliver. A failure to deliver is *prima facie* evidence of negligence in the carrier; an omission or neglect to discharge the duty he has assumed.

This is negligence. This was conceded by defendant at the trial, as he made no motion for a nonsuit, but proceeded with his proof.

A defence is not made to this *prima facie* case of negligence, by simply proving that the property was consumed by an ordinary fire, which broke out on the defendant's own premises.

If it were a destruction by lightning, the case might, perhaps, be different. Then human care or effort would be generally, out of the case, to avoid the lightning or the extraordinary floods. Though, even there, it is said, the carrier must show the exercise of proper care. (*Read* v. *Spaulding*,

30 N. Y., 630; Story on Bail., § 470; Ang. on Common Car., § 266; *contra, Charleston R. R.* v. *Reeves*, 10 Wall., 176.)

But, as to an ordinary fire on one's own premises, some neglect is, as a general rule, the cause of it.

Instead of being an answer to the *prima facie* case of negligence, such a single fact would afford additional evidence of a want of care, or of negligence.

The carrier must show a defence. He must show, what it is easy to do, if the truth will allow, that he has done his duty to prevent the fire, that he has exercised ordinary care, in vain. Then his defence is complete, and not till then.

Common justice and public policy alike demand this rule. With what propriety can a plaintiff be called upon to prove facts known only to the defendant or his employes; to call defendant's witnesses?

The authorities on this subject are conflicting, and it is impossible to reconcile them. I do not propose to attempt it. (*McDaniels* v. *Robinson*, 26 Verm., 316; *Turney* v. *Wilson*, 7, Yerger, 340; *Whiteside* v. *Russell*, 8 Watts & S., 44; *Swindler* v. *Hilliard*, 2 Richardson, 2486; *Roberts* v. *Riley*, 15 La. An. R., 103; *Beardslee* v. *Richardson*, 11 Wend., 26, per SAVAGE, Ch. J.; *Parsons* v. *Monteath*, 13 Barb., 353, per WELLS, J.; *Per contra*, id., 48, per C. L. ALLEN, J.; *Mann* v. *Birchard*, 40 Verm., 326–338; *Lichtenhein* v. *B. and P. R. R.*, 11 Cush., 70; *Arent* v. *Squire*, 1 Daly, 347; *Christie* v. *Griggs*, 2 Camp., 79; *Platt* v. *Hibbard*, 7 Cow., 497. *Per contra: N. J. St. Nav. Co.* v. *Mer. Bank*, 6 How. U. S., 344; *Schmidt* v. *Blood*, 9 Wend., 268, and cases there cited; *Fort* v. *Storrs*, 2 Barb., 326; 3 id., 380; *Memphis and Charleston R. R.* v. *Reeves*, 10 Wall., 176; *West. Tr. Co.* v. *Downer*, 11 id., 129; *Bingham* v. *Rodgers*, W. & S., 495; *F. and M. Bank* v. *Champ. Tr. Co.*, 23 Verm., 186.)

This precise question, as to the burden of showing the exercise or the absence of ordinary care, where goods are consumed by a fire occurring upon the carrier's own premises, is not inconsistent with the position, that upon the plaintiff, ultimately rests, the *onus* of establishing the negligence.

That the carrier is required to show, that the care in the case above stated, rests upon two clear grounds.

First. The knowledge is exclusively with the carriers. The plaintiff ought not to be compelled to call defendants' witnesses, or to find them.

Second. Experience shows that an ordinary fire, as a general rule, does not occur without negligence.

Where the testimony is all in, as to the cause of the fire, the care exercised to prevent or to save, the *onus* may still rest with the plaintiff to establish the negligence; and if the testimony be evenly balanced, that the jury cannot determine to which side it preponderates, the plaintiff cannot recover.

The charge of the judge contained nothing at war with this proposition, and should be sustained.

It is also urged, that the contract of the Transportation Co. at Chicago, stipulated in substance, that the burden should be upon the plaintiff to show negligence.

It has been already stated that that contract was made without authority from the plaintiff; and hence, imposed no obligation, even if the parties could control the rules of law by contract.

It is urged that the court did not properly define ordinary care to the jury.

There was no exception to the definition, and it cannot here be reviewed.

Upon the question of negligence, I think there was testimony sufficient to carry the cause to the jury.

What is ordinary care depends entirely in each case upon the nature of the peril. The care must be in proportion to the peril.

As to the amount of damages it has already been held in this opinion, that the Union Transportation Company's contract has no force as against this plaintiff upon that assumption. I do not understand that the rule of damages is complained of.

The judgment should be affirmed.

For affirmance, PECKHAM and ALLEN, JJ.

For reversal and new trial, Ch. J. GROVER, FOLGER, and RAPALLO.

Judgment reversed.