from which the appeal was taken all the papers on file in his office making up the judgment roll of said action or proceeding. Therefore he claims that the cases cited are not authoritative on this proceeding, because, in consequence of the appeal, the original record was not in the Municipal Court, but had been returned to the appellate court, and that therefore the cause was no longer in the Municipal Court, and no motion could be made therein, and so the order granting a new trial was a nullity. The effect of holding that this motion was improperly made at the time when the appeal was pending might be, if it had been made after the Appellate Term affirmed the judgment, that the motion would then be denied, because of laches in not making it as soon as the evidence was discovered. While it is true that the return took the original papers constituting the record to the Appellate Term, yet it should be recalled, as pointed out by the Court of Appeals in Henry v. Allen, 147 N. Y. 346, 41 N. E. 694, the motion for a new trial on the ground of newly discovered evidence is made on facts dehors the record.

In view of the absolute grant of power to entertain the motion, without restriction or limit as to time, given by the Municipal Court act, we think the Municipal Court judge had power to entertain the motion and grant the order. As by that order the judgment was vacated, there was no judgment to be enforced by execution, and therefore the clerk was right in declining to issue execution. Thirty-two dollars were the costs awarded to the plaintiff by the original judgment, and were deposited with the clerk as a necessary step in perfecting the appeal. The title thereto of the plaintiff depended, however, upon the judgment, and we think that, that having been vacated, he had no right to compel the payment of said sum so deposited by the defendant, and therefore the order appealed from was right, and should be affirmed, with $10 costs and disbursements. All concur.

---

(134 App. Div. 413.)

### BURKE v. ERIE R. CO.

(Supreme Court, Appellate Division, First Department. November 12, 1909.)

1. CARRIERS (§ 134*)—INJURY TO GOODS—EVIDENCE AS TO IDENTITY.

    Evidence as to the identity of goods damaged by fire and water held sufficient to render the carrier liable.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 588; Dec. Dig. § 134.*]

2. CARRIERS (§ 156*)—LIMITATION OF LIABILITY—EFFECT.

    A clause in a bill of lading, exempting the carrier from liability for loss "by floods or by fire," limits the carrier's liability to negligence.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 699; Dec. Dig. § 156.*]

3. CARRIERS (§ 163*)—INJURY TO GOODS—BURDEN OF PROOF.

    Where freight is damaged by fire, the plaintiff must show that the fire was caused by the carrier's negligence.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 722–725; Dec. Dig. § 163.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. CARRIERS (§ 51*)—INJURY TO GOODS—EFFECT OF INSURANCE.**

A shipper, electing to accept a reduced rate by filling out the shipping order and accepting the bill of lading, is bound by the terms of the order making it a part of the bill of lading, and giving the carrier the benefit of insurance on the freight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 148; Dec. Dig. § 51.*]

**5. CARRIERS (§ 162*)—INJURY TO GOODS—PLEADING.**

A carrier, pleading a provision of a shipping order, binding on the shipper, as made a part of the bill of lading by reference therein, is entitled to the benefit of such provision, without pleading the order as such.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 162.*]

**6. EVIDENCE (§ 591*)—CONCLUSIVENESS ON PARTY INTRODUCING.**

A party, offering a shipping order in evidence against the carrier, is bound by its terms, and the carrier is entitled to the benefit thereof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2440–2443; Dec. Dig. § 591.*]

Appeal from Trial Term, New York County.

Action by Charles C. A. Burke against the Erie Railroad Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

William C. Cannon (R. L. Von Bernuth, on the brief), for appellant. Almet Reed Latson, for respondent.

LAUGHLIN, J. This is an action on an assigned claim to recover the value of 66 bales of tow shipped by the Barbour Flax Spinning Company over the defendant's railroad from Paterson, N. J., consigned to the Smith & Dove Manufacturing Company, at Andover, Mass. It was conceded upon the trial that on the 4th day of April, 1905, the Barbour Flax Spinning Company delivered to the defendant, at Paterson, N. J., 157 bales of tow for shipment to said consignee; that 91 bales only were carried to the destination and delivered to the consignee; and that the remaining 66 bales were not delivered. It was shown that the 66 bales, which were not delivered, were shipped in Erie box car No. 100056, which left Paterson, N. J., on the 6th day of April, 1905, the second day after the freight was delivered to defendant, at about 5 o'clock in the morning, en route to Binghamton, where it was to be transferred from the defendant's line to the Delaware & Hudson Railroad. It reached Port Jervis at 10:50 a. m. the same day, and remained there until 6:55 p. m. on April 7th, and reached Susquehanna at 5 a. m. the following day. At about 8 o'clock in the evening of that day the tow in the car was discovered to be on fire. The car was then standing on a car shop track in front of the car shop in the Susquehanna westbound yard. The fire appeared to be in the car, on the top of the load, near the roof. Water was applied to extinguish the fire, and by the fire and water the tow was so damaged as to be ultimately of no value.

Counsel for the appellant contends that the plaintiff failed to show that the tow thus destroyed by fire and damaged by water was the tow

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which was shipped by the Barbour Flax Spinning Company. This contention is based on the ground that neither the identity of the tow nor of the car in which it was shipped was shown to be the same as that in which the fire occurred. We are of opinion that this claim is not well founded. It appears that the tow was placed in Erie box car No. 100056, at Paterson, N. J., for shipment, and it appears that the fire occurred in Erie box car No. 100056. It is not to be presumed that the railroad company had two box cars bearing the same number. It is well known that cars are traced by their numbers, and the object of the number is to identify the car. There is no evidence showing that the tow was removed from the car in which it was placed. Moreover, it appears that the bales of tow were tagged, and that 38 bales of the tow which had not been opened, and a large quantity of loose tow from bales which had been opened on account of the fire, were subsequently returned to Paterson, N. J., and examined by the shipper, and pronounced to be worthless, without any question being raised concerning the identity of the tow.

The bill of lading which was delivered to the shipper by the carrier expressly provided on its face that the shipment was—

"subject to all the conditions, whether printed or written, herein contained (see conditions on back hereof), and which are agreed to by the shipper and accepted for himself and his assigns as just and reasonable."

The first condition on the back of the bill of lading provided, among other things, that the carrier should not be liable for any loss of the property or damage thereto "by floods or by fire." This condition limited the carrier's liability to negligence (Lamb et al. v. Camden & Amboy R. R. & T. Co., 46 N. Y. 271, 7 Am. Rep. 327; Whitworth et al. v. Erie Railway Company, 87 N. Y. 413; Rowan v. Wells, Fargo & Co., 80 App. Div. 31, 80 N. Y. Supp. 226), and the rule is now well settled that in such case the burden of proof is on the shipper or consignee to show negligence on the part of the carrier, where the goods are damaged or destroyed by fire (Lamb et al. v. Camden & Amboy R. R. & T. Co., 46 N. Y. 271, 7 Am. Rep. 327; Whitworth et al. v. Erie Ry. Co., 87 N. Y. 413; Rowan v. Wells, Fargo & Co., 80 App. Div. 31, 80 N. Y. Supp. 226). Of course, if the carrier were shown to be responsible for the fire, it would be responsible for the damage which was caused by the water, as well as for that by the fire.

At the close of the evidence both parties moved for the direction of a verdict, and thereby the questions of fact were submitted to the court, instead of the jury, for determination. It is claimed on the part of the appellant that the plaintiff failed to show that the fire was caused by its negligence. The plaintiff relies principally upon the lapse of time between the date of shipment and the fire, which was unexplained, and contends that negligence might be inferred therefrom, owing to the fact that the goods had only been transported a distance of about 136 miles. If the fire had not originated in the car, there would be ground for this contention; but we are unable to find any evidence in the record tending to show that any delay in the shipment or transportation caused the fire. There is no evidence of the description of the car, other than the statement that it was a box car; and it does

not appear whether or not it was sealed. There is no evidence as to whether sparks or coals of fire could enter the car from outside. In fact, the cause of the fire is wholly unexplained. Where freight is damaged or destroyed by fire, there is no presumption that the carrier is guilty of negligence; but some facts or circumstances tending to show negligence, or from which negligence may fairly be inferred, must be shown by the plaintiff. Whitworth et al. v. Erie Ry. Co., supra; Rowan v. Wells, Fargo & Co., supra. In the Whitworth Case, supra, there is an intimation that it might be sufficient to show that it was within the power of the defendant to explain the origin of the fire; but even such evidence was not presented here. There is evidence indicating that some of the damage was caused by unreasonable delay on the part of the carrier in returning the wet and damaged tow to the shipper; but the value of the tow that might have been saved by prompt handling has not been shown.

We are also of opinion that the court erred in excluding evidence duly offered to show that the freight was insured by the shipper and that it collected the insurance thereon. It appears that the railroad company furnishes its customers with printed shipping orders and bills of lading in blank on two sheets of paper, attached together, but the line between them being perforated. Both of these blanks were filled out by the shipper and presented to the carrier, whose agent separated them, retaining the shipping order, and delivering the bill of lading proper to the shipper. At the head of the shipping order was printed the following:

"The shipper may elect to accept the conditions printed on the back hereof, and as contained in the bill of lading of which this shipping order is a part, or may, as provided below, require the carriage of property at 'carrier's risk.'"

And below this was a blank for the date, and then a direction to the carrier to—

"receive, carry, and deliver the articles described below, in accordance with the classification in effect at the date of this order, and subject to the conditions of the bill of lading, of which this shipping order is a part. (For carrier's liability see note below.)"

Underneath this direction the shipping order contained a blank for the description, marking, and weight of the freight, and underneath that it provided in a printed note as follows:

"Note.—Unless otherwise provided in the classification, property will be carried at the tariff rates, if shipped subject to the conditions of the uniform bill of lading. If the shipper elects not to accept the said tariff rates and conditions, he should so notify the agent of the receiving carrier at the time his property is offered for shipment, and if he does not give such notice it will be understood that he desired his property carried subject to the uniform bill of lading conditions in order to secure the reduced class rates thereon. Property carried not subject to the conditions of the uniform bill of lading will be at the carrier's liability, limited only as provided by common law and by the laws of the United States and of the several states, in so far as they apply. Property thus carried will be charged 20 per cent. higher (subject to a minimum increase of one cent per 100 pounds) than if shipped subject to the conditions of the uniform bill of lading, and the cost of marine insurance will be added over any part of the route that may be by water."

The last sentence of the third condition printed on the back of the shipping order was as follows:

"Any carrier or party liable on account of loss of or damage to any of said property shall have the full benefit of any insurance that may have been effected upon or on account of said property."

The bill of lading proper likewise contained numerous conditions printed on the back, in fact, the same number of conditions, and, like those on the shipping order, they were headed, "Uniform Bill of Lading Conditions;" but this condition with respect to insurance, already quoted, was not in the conditions on the bill of lading proper.

· Counsel for the respondent contends that the conditions printed on the back of the shipping order formed no part of the contract, because they were not incorporated in the bill of lading. The plaintiff offered both papers in evidence. We are of opinion that the shipping order and the bill of lading proper are to be read together, and together constitute the bill of lading and contract; for it is twice expressly provided on the face of the shipping order that it forms a part of the bill of lading, and by express terms the conditions on the back of the shipping order were incorporated therein. The shipper elected to accept the low tariff rate by filling out the shipping order and accepting the bill of lading at a rate for freight transportation which was 20 per cent. lower than it would have been obliged to pay, had it desired to hold the carrier to its common-law liability.

It is further claimed that the carrier is not entitled to the benefit of the provisions of the shipping order, because it only pleaded the bill of lading as a defense. Although it expressly pleaded this provision of the shipping order as contained in the bill of lading, and the court denied its motion to amend its answer by pleading the shipping order as well, we are of opinion, for the reasons already assigned, that it was entitled to the benefit of the shipping order as part of the bill of lading. Moreover, the plaintiff, having offered the shipping order in evidence, was bound by its terms, and defendant was entitled to the benefit thereof. Jonasson v. Weir, 130 App. Div. 528, 115 N. Y. Supp. 6; Springer v. Westcott, 78 Hun, 365, 29 N. Y. Supp. 149. We are of opinion, therefore, that the carrier in any event was entitled to the benefit of any insurance held by the shipper on the freight, to the extent of its liability.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.